HENRY C. WILLEY and wife *vs.* INHABITANTS OF BELFAST.

*Injury by defective way. Practice. Verdict.*

If a defect in a highway is the sole, true, efficient cause of an accident, it is not necessary that the injury should be actually received upon the precise spot where the defect exists, or that it should appear that there was any defect where the injury was received.

If a party desires specific instructions dependent upon a finding by the jury of a particular state of facts, he must seasonably request them in writing and not rely upon the judge, without such requests, to notice all the positions he may have taken in argument.

It is a question of fact for the jury to determine in the first instance, whether a defect in a highway was the sole cause of an injury; but their finding may be set aside by the court in case of manifest error.

Willey *v.* Inhabitants of Belfast.

If a defect in a highway causes such a breaking and derangement of a safe and · proper vehicle, that the direct and natural consequence is the frightening of a kind, safe, and well-broken horse beyond the control of a reasonably skillful and careful driver, and the horse while violently running down a steep hill falls and the plaintiff is thrown out and injured, it is competent for the jury to find the defect to be the sole cause of the accident. The fall of such a horse, under such circumstances, is not to be reckoned a contributory cause, but a part of the accident, like the fall of the plaintiff from the carriage.

A paper found in the jury-room after the jury have left it, upon which twelve dif-, ferent sums, ranging from nothing to several thousand dollars, are set down and added together and the amount divided by twelve, the quotient being the precise sum for which the verdict was rendered, does not furnish sufficient cause for setting aside the verdict. It cannot be concluded from this alone that each and all of the jurors did not agree to the verdict rendered.

On EXCEPTIONS and a motion to set aside the verdict as being against the law and the evidence, and " because the jury made up their verdict by rendering the twelfth part of eleven sums chalked by eleven of the jury, one of the jury chalking nothing, thus showing that the verdict was the verdict of eleven members of the panel only," and a motion for a new trial on the ground of newly discovered evidence.

This was an action to recover damages for injuries alleged to have been received by the female plaintiff by reason of a defect in a highway, which the defendants were bound to keep in repair.

At the trial of the cause the defendants' counsel assumed certain legal positions in his argument, and to the neglect of the presiding judge to give specific instructions upon these points, the defendants except.

A verdict was rendered for the plaintiff for $3,541.67. After the trial a paper was found in the jury-room, by the messenger, upon which there were written eleven sums of various amounts and a space for another sum filled with cyphers. These amounts were added together and the sum divided by twelve, .the quotient so obtained being the precise amount of the verdict.

The remaining facts in relation to the case are sufficiently stated in the opinion.

*N. Abbott,* for the defendants.

The fact that the defendants' counsel took certain legal grounds in his argument to the jury, was equivalent to a request to the judge to instruct upon those points. Upon the points thus raised, that it must appear that the road was defective where the horse fell, and that it must appear that the road was defective at the place where the bolt came out, the justice presiding gave instructions against the positions urged by defendants' counsel. On this point see *Cook* v. *Charlestown*, 98 Mass. 80 ; *Titus* v. *Northbridge*, 97 Mass. 258.

Upon the other positions the judge gave no instructions.

*A. G. Jewett*, for the plaintiff.

BARROWS, J. The plaintiffs are husband and wife, and sue here to recover damages for a personal injury suffered by the wife by reason, as they allege, of the defective condition of the highway on a long and steep hill known as " the Pitcher Hill " in Belfast.

The defendants present the case upon exceptions, and two motions to set aside the verdict rendered for the plaintiffs, accompanied by a voluminous report of evidence, and a stenographer's transcript of the charge given to the jury by the presiding justice.

That the road was and had long been defective and dangerous at various points on this hill by reason of stones fixed and loose, and channels wrought by running water, seems to have been clearly established. The precise mode in which the accident occurred seems to have been thus : The female plaintiff had that afternoon driven over the road up the hill and some distance beyond with another woman in the wagon, and was returning alone. Just after passing a large rock in the middle of the road, so placed that one or the other of the wheels of the carriage must almost unavoidably go over it, the bolt which held the whiffletree to the cross-bars of the wagon came out and the whiffletree fell on the heels of the mare, ordinarily a gentle and safe animal, and she began to run down the hill, the plaintiff meanwhile doing what she could to guide the beast, which before being checked, and while running violently, stumbled and fell upon a comparatively level

and smooth place, throwing the plaintiff violently out and inflict-
ing severe bodily injuries. The whiffletree bolt was found in the
road, a couple of hours after the accident, nine rods below the
large rock above mentioned, and was exhibited to the jury at the
trial. The plaintiff testified that her brother, Charles West, at
her request, examined the wagon that morning and found it all in
good order. And the said Charles West gave testimony to the
same purport and effect, and in particular that the nut was then
in place and well secured.

The defence appears to have proceeded mainly upon the ground
that the insecurity or deficiency of the nut contributed to the acci-
dent; that West's testimony was false; that the nut could not
have worked off in going two or three miles, nor have been
wrenched off in passing the stone and rut near and below which
the accident occurred, and that there was carelessness on the part
of the plaintiff in causing the mare to quicken her pace a little
distance above the rock, in order to avoid a sight offensive to her
modesty, and that this was also a contributory cause. These ques-
tions were all raised to the jury, and their attention was particu-
larly directed to them by the Chief Justice in his charge, as vital
questions in the case for their determination. We do not think
the conclusions to which the jury seem to have come, were so
manifestly erroneous as to authorize us to set aside the verdict on
the ground that it was against law or evidence or the weight of
evidence. But besides these matters to which the attention of the
jury was directly called with appropriate instructions so far as the
law was concerned, the exceptions show that the defendants' coun-
sel in his argument to the jury took the following positions:
1. That to establish the liability of the city "the jury must find
that the road was defective where the horse fell and the injury was
received." 2. " That, to make the city liable, the jury must find
that the road was defective either where the horse fell or where
the whiffletree bolt was twisted or came out." 3. That the nut
must have been shaken off or worked off wholly by the defects in
the road, and not in part by passing over such portions of the road

as were not found to be defective. The defendants' counsel contends now that the fact that he took these positions in his argument to the jury is equivalent to a request for specific instructions as to each, and that it was, thereupon, incumbent upon the presiding judge without further reminder or request, besides laying down the general principles which were to govern the jury in their examination of the case, to instruct them particularly as to these precise points which the defendants' counsel had made in argument.

We cannot recognize the correctness of any such rule of practice. On the contrary we hold that if either party desires the presiding justice to make a specific application of the law to the view which such party takes of the facts in the case, he must seasonably present his propositions in writing in distinct and intelligible form. The presiding justice is under no obligation to comment upon the testimony, or to enforce or indorse the arguments or positions of counsel. It is competent for him to do so when in his opinion a decision in accordance with law and justice will thereby be promoted, and the correctness of all legal propositions which he lays down may be tested on exceptions. But it is no cause of complaint, when he has stated correctly the principles of law applicable to the case, that he omits to give specific instructions which may or may not be correct and applicable, depending in these respects solely upon the view which the jury may entertain of the facts proved, where no specific requests are made to that end, even though counsel in their arguments to the jury may have made the points and endeavored to enforce them.

But it is urged that as to the first two points the judge, although he did not directly rule adversely to the positions taken by the defendants' counsel, said that which implied that they could not be sustained. He had repeatedly and in various forms instructed the jury that among the matters which it was incumbent upon the plaintiff to establish, in order to entitle her to a verdict, were the propositions that the horse and wagon were safe, suitable, and proper; that she was driving with ordinary skill and care, and that the injury was occasioned solely by the defect in the highway.

He had called the attention of the jury to the inquiry whether the nut which held the whiffletree bolt in place was securely fastened, and whether the testimony of Charles West, the plaintiff's brother, was credible and true, and told them that if the nut " was insecurely fastened, although the brother examined and thought it was safe, yet the plaintiff could not recover if the insecure fastening contributed to the injury." Then he went on to call their attention to what he spoke of as the main question of fact for them to decide, viz.: " whether the wagon, in reference to the fastening of that bolt by the nut, was safe or was the accident caused by the bad road ? " A review of the series of questions which he put to the jury as to the cause of the accident, makes it plain that while he stated no positive rule of law with respect to the defendants' first two points above-named, he left it to the jury to decide what was the true, efficient cause, in such a manner as must have conveyed the idea to them that it was not necessary that they should find that the road was defective at the spot where the horse fell, if the defects in the road had caused the detachment of the nut and the twisting out of the whiffletree bolt and the consequent fright of the horse.

And therein we think he did right. It was all one catastrophe, from the passing of the wagon wheels over the rock and rut and the detachment of the whiffletree till the plaintiff struck the ground.

We have no scruple in holding that if a defect in a highway causes such a breaking and derangement of a safe and proper vehicle, that the direct and natural consequence is the frightening of a kind and well-broken horse, and putting him beyond the control of a reasonably skillful and careful driver, the town liable to repair the highway, and having notice of the defect must answer for the consequences, although the ultimate injury occurs, fortunately for all concerned, on a spot where the way may be smooth and not defective. The stumbling of a safe, gentle, and well-broken horse running violently down hill, in consequence of an accident caused by a defect in the highway, cannot be reckoned as

a contributory cause. It is as much a natural and direct consequence as the fall of the plaintiff herself from the wagon. It is part of the accident caused by the defect. And this brings us directly to the consideration of the third matter of complaint which is, that the judge gave no instructions as to what conclusion would follow in case the jury should find that the nut, which held the whiffletree bolt in place, became detached partly by means of the defect and partly by working off in passing over those portions of the road which were not defective. As we have before observed the omission to request specific instructions touching such a hypothesis takes away the ground of complaint. It may be further remarked that the hypothesis is based, not upon any evidence, but purely upon the surmise of counsel; and we take occasion here to add that the doctrine of contributory causes produces annually a crop of disputations, which savor more of the subtleties and learning of the schoolmen than of a desire to evolve any practical, intelligible rule which shall be of service in administering justice between party and party.

In the case before us the defendants' counsel asks the jury to go back of the wrench which brought a well-secured whiffletree against the horse's heels, and find upon mere surmise that the nut might have been started in traveling over portions of the road not defective; and the complaint is that the judge refrained from mystifying the jury by a suggestion that, in such contingency, it would be competent for them to relieve the defendants from liability on the ground of a contributory cause.

One might as well suggest the laws of gravitation as a contributory cause. Those laws certainly did operate in producing the injury, while there is neither certainty nor evidence that the smooth portions of the way aided in loosening the nut. Yet every one would feel the absurdity of reckoning those laws as a contributory cause of the accident. If it ever happens that logic and common sense cannot be reconciled in the application of this doctrine to the decision of causes, logic must give way.

The only substantial question of this nature that arose upon this

evidence was whether the fright and violent running of the horse ought to be accounted a contributory or intervening cause.

Now, in this State, it was settled in *Verrill* v. *Minot*, 31 Maine, 299, that it could not be ruled as matter of law that the violent running of the horse at the time of the accident would preclude the plaintiff from recovering. Among us the law has been administered in conformity with that decision ever since. So far as this doctrine is inconsistent with that propounded in the cases cited by the defendants' counsel, from the ninety-seventh and ninety-eighth volumes of Massachusetts Reports, we are satisfied to adhere to the rule upon which we have so long practiced.

Even where the fright and the running was not occasioned, as it was here, by the defect in the highway, it cannot be determined as matter of law that the defect was not the sole, true, efficient cause of the injury. It is a question of fact for the jury to decide ; and their decision is subject to revision by the court if there is manifest error. The case forcibly brings to mind that numerous class in which various courts, with more or less show of reason, have undertaken to declare as matter of law that this or that hasty act, omission, or neglect shall be deemed to constitute a want of ordinary care. The result is a mass of decisions apparently irreconcilably in conflict, but which on being carefully examined will each be found to include some matter of fact not present in the previous case ; some one of the " circumstances which alter cases," and which demonstrate the futility of attempting to lay down any general inflexible rule of law in relation to the subject. The attempt to adhere to such rules produces every now and then results which reflect no credit upon courts, and are felt to be painful perversions of right and justice. The difficulty is inherent in the nature of the subject. In the infinite variety of circumstances attending an accident of the kind we are considering, it is in vain to attempt to lay down in advance the doctrine that one isolated act or fact, the character and effect of which may be totally changed by concomitants which it is impossible to foresee, shall be deemed conclusive against the right to maintain the suit. All that can be

settled is whether, under all the circumstances of the particular case, it must have that effect.

The motion to set aside the verdict based upon the paper found in the jury-room cannot be sustained. Each juror signified his assent in open court to the verdict which was rendered. It by no means follows that the one who is supposed to have put down nothing was not in favor of returning a verdict for large damages. The previous conferences of the jury may have satisfied him that the average would more nearly conform to his estimate if he added nothing to the aggregate. It was the subsequent unanimous assent to and ratification of the precise sum found, which constituted the verdict.

The testimony called newly-discovered might have been had at the trial by the exercise of reasonable diligence, and it is not necessarily conflicting, and would not probably change the result.

*Motions and exceptions overruled.*

APPLETON, C. J.; CUTTING, WALTON, and PETERS, JJ., concurred.