## FILLMORE *v.* THE UNION PACIFIC RAILROAD COMPANY.

EVIDENCE.—A party who calls out the fact that a bond is in existence, cannot complain of the production of the instrument to confirm the fact.

IDEM.—A party cannot complain that he is held to the effect of evidence which he vouches for, by producing the witnesses who gave it.

EXCEPTIONS.—A general exception to a charge given to a jury, without specifying any supposed error, or indicating the grounds of the exception, will not be regarded by an appellate court.

VERDICT.—Where a verdict is what it should have been, though erroneously reached, it must stand.

ERROR to the District Court of Laramie County

This case was originally commenced by petition of the Union Pacific Railroad Company, defendant in error, filed in the district court of the second judicial district of Wyoming Territory, Albany county, on the 28th day of September, 1875, praying judgment against Fillmore, plaintiff in error, on account of freight, rent, etc., for the sum of $583.59 and interest thereon from November 1st, 1872,

at 12 per cent. per annum.   And thereafter, on the 28th day of October, A. D. 1875, the defendant, Luther Fillmore, now plaintiff in error, filed in said court his answer, first denying generally the plaintiff's cause of action; second, pleading by new matter payment by application of certain moneys due defendant on a sale of ties; and third, pleading offset, setting up a sale of certain railroad crossties, alleging the amount due therefor on the contract price to be $3,783.60, which said sum the defendant prayed might be set off against so much of plaintiff's claim as equals the same, and that the defendant, now plaintiff in error, have judgment for the balance thereof, with interest at 12 per cent. per annum from June 1st, A. D. 1871.

And thereafter, the said plaintiff, now defendant in error, on the 11th day of November, A. D. 1875, filed its reply to the set-off of the defendant, now plaintiff in error, same being a general denial to the said defendant's offset. Whereupon the said plaintiff applied for a change of venue, and the said papers were filed in the district court of the first judicial district on the 3d day of May, A. D. 1876, by J. W. Bruner, clerk of said court.   And the said cause was thereafter tried in said court on the issues so made, and the jury failed to agree.   After the said jury was discharged the defendant, now plaintiff in error, by one of his attorneys, E. P. Johnson, in open court asked permission to withdraw the first count in defendant's answer, to wit, the general denial, which was granted by the court; and the said general denial in defendant's answer was then and there struck out, and the answer then stood so amended. Thereafter, and on the 15th day of December, A. D. 1877, and upon the petition of the said plaintiff, now defendant in error, the said cause came on to be tried.   And after the various proceedings had during said trial, the jury returned into court their verdict in favor of the plaintiff, now defendant in error, and against the said defendant, now plaintiff in error, for the sum of $937.24, for which sum judgment was awarded.

*M. C. Brown* and *E. P. Johnson*, for plaintiff in error.

The plaintiff in error pleaded for answer, set-off. The defendant in error joined issue by reply. The issue to be tried is the issue thus made, wherein the defendant in the action (plaintiff in error here) as to this issue has the affirmative, and stands as plaintiff, and the real plaintiff (defendant in error here) becomes as to this issue the defendant. The position of the parties is reversed. Pomeroy's Remedies, 689; *Rose* v. *Treadway*, 4 Nevada, 455; *Hook* v. *Craighead*, 32 Mo., 405.

Under a general denial the only evidence admissible is such as negatives such facts as the plaintiff is bound to prove in order to make out his cause of action. Moak's Van Santvoord's Pleadings, third edition, page 511; Pomeroy's Remedies and Remedial Rights, sec. 660, notes 664, and c. 689. The general rule, as above stated, as to the admission of evidence under a general denial, is almost universal under code. practice. The great diversity of opinion and confusion arises in the application. Pomeroy's Remedies, 670 and 671.

Therefore, the only theory upon which proof of property in a third party under a general denial can be tolerated or permitted is this, to wit: That when a person sells, there is an implied warranty, and that it was incumbent upon the plaintiff in error in order to make a *prima facie* case, to prove in the first instance title in himself. No such proof is necessary, because in personalty, delivery may constitute a part of a sale. The fact of delivery shows possession, and ownership is presumed from possession. Benjamin on Sales, 313, 314, 315, 319. Failure of title, express or implied warranty, etc., can only be proved when specially pleaded. It is new matter. See Pomeroy's Remedies, secs. 708, 709, and the authorities there cited; also, 695, 700;. *Fetherly* v. *Burke*, 54 N. Y., 646 ; *Weaver* v. *Borden*, 49 N. Y., 286, 297; *McKinney* v. *Bull*, 16 N. Y., 297; *Morrell* v. *Gouin*, 5 Discr., 389, 391; *Martin* v. *Pugh*, 23 Wis., 184 ; *Philips* v. *Jarvis*, 19 Wis., 204; *Stevens* v. *Thompson*,

5 Kans., 305; *Finley* v. *Quirk*, 9 Minn., 194, 200, 203; *Nash* v. *St. Paul*, 11 Minn., 174, 118; *Morrell* v. *Irving Fire Ins. Co.*, 33 N. Y., 429, 443. Fraud to be proved must be specially pleaded. Pomeroy's Remedies, secs. 687, 708; *Jenkins* v. *Long*, 19 Ind., 28, 29; *Caperro* v. *Builders' Ins. Co.*, 39 Cal., 123; *Oroville & C. R. R. Co.* v. *Supervisors, etc.*, 37 Cal., 354; 30 Cal., 666; *Dailey* v. *Proetz*, 20 Minn., 411, 417. This is so even in replevin.

Evidence of title in Bennett cannot be considered as tending even to contradict a contract of sale. This is peculiarly so when it is claimed by the defendant in error that Fillmore never had possession of property sold, and that the property when sold was in possession of third party. See authorities before cited as to pleadings, etc.; also, Benjamin on Sales, sec. 641 and authorities there cited; 2 vol. Kent's Com., page 478; *Scranton* v. *Clark*, 39 N. Y., 220; *Pratt* v. *Philbrook*, 32 Maine, 23; Parsons' Contracts, (6 ed., vol. 1), pages 573, 574, 575 and notes.

A contract of an agent once ratified by his principal becomes the contract of the principal, the same as if originally made by him. To say that a ratification of a contract can be revoked, is to say that a contract made by the principal can be revoked. A statement of the proposition is sufficient to show its absurdity.

The court charges that "fraud pollutes everything it touches"—a sentiment entirely true in morals, but only permissible in legal trials when an issue of fraud is tendered by the pleadings, giving all parties a fair chance to meet so grave a question. By permitting the defendant in error to offer in evidence in support of a proposition, as on issue joined when not pleaded, and in not permitting the plaintiff in error to meet that proposition, as on issue joined in defense, but restricting the plaintiff in error as if in rebuttal only, and this when the fault in pleading is wholly with the defendant in error, the court did great injury to plaintiff in error and deprived him of his substantial rights in the premises.

*W. R. Steele,* for defendant in error.

While the plaintiff below contended that any evidence which went to show that the defendant Fillmore never had a cause of action against the plaintiff below, growing out of the sale of the railroad cross-ties in controversy, was admissible under the general issue; that any evidence is admissible under the general denial, which shows that plaintiff never had a cause of action against the defendant, and that it is only necessary to plead specially when it is sought to show that a cause of action once existed, but that it has been avoided by circumstances arising subsequently. See 1 Chitty's Pleadings, 472, 507; 2 Swan's Practice, 659, 660; 1 Nash, 171, 177, 178, 181, 184; *Wilt* v. *Ogden,* 13 Johnson, 56; *Sill* v. *Rood,* 15 Id., 230; *Heck* v. *Shener,* 4 Sergt. & Rawle, 249; *Young* v. *Black,* 7 Cranch, 565.

It is well established that where a question is fairly submitted to the jury, and the evidence in the record is ample to support it, that the court above will never set aside the verdict, as being against the weight of evidence, unless it is clearly and palpably so. 2 Nash Pleading and Practice, 1043–4; *French* v. *Millard,* 2 Ohio State, 44; *Abernethy* v. *Wayne etc. Bank,* 5 Ohio State, 266. Error must appear affirmatively, it will not be presumed. *Dallas* v. *Ferneau,* 25 Ohio State, 635; *Courtwright* v. *Staggers,* 15 Ohio State, 511–514; *Bethel* v. *Woodworth,* 11 Ohio State, 393; *Wagus* v. *Dickey,* 17 Ohio State, 439.

The Code of Civil Procedure, section 304, provides: That no exception shall be regarded unless it is material and prejudicial. See, also, 2 Nash Pleading & Practice, 1250; *Kugler* v. *Wiseman,* 20 Ohio, 361; *Chase* v. *Washburn,* 1 Ohio State, 244; *French* v. *Millard,* 2 Ohio S., 44; *Jordan* v. *James,* 5 Ohio, 89; *Harman* v. *Kelley,* 14 Ohio, 502; *Portage Bank* v. *Lane,* 8 Ohio S., 405.

An inspection of the record will conclusively demonstrate, that there is neither error of fact or law therein;

that the case was fairly and impartially tried in the court below, the jury by their verdict finding the very truth, and establishing rights that ought never to have been the subject of controversy.

PECK, J.   The claim set up in the petition brought by the plaintiff below, the defendant here, was admitted upon the trial in the district court; and the only issue there tried was raised by the answer, which alleged as a counter-claim, that the Company was indebted to Fillmore in $3,783.60, for 16,816 railroad cross-ties, sold and delivered by him to it, on or about May 1, 1872, at 22½ cents a tie, and the reply which denied the sale.   The issue gave to him the opening and closing of the proofs.   The Company admitted that it purchased the ties at the time, but claimed that they belonged to E. W. Bennett, and that it purchased them from him through M. C. Brown as his attorney; and introduced evidence to sustain this theory.   Sundry exceptions were taken for incompetency and irrelevancy to the admission, on the part of the Company, of evidence which tended, and as tending in part to show that the purchase was so made, and that, when made, the ties were Bennett's.

It was mutually conceded that there was but one lot of ties—the 16,816, but one sale of them to the Company, and that the sale was made either by Bennett or Fillmore; which of the two sold was the principal question; if the Company bought of Bennett, it could not have bought of Fillmore; proving that it purchased of one, disproved that it purchased of the other; so that evidence tending to show that it bought of the former, went directly in support of the general denial, interposed to the counter-claim: evidence that it bought from him through Brown as his agent, explained the transaction; also went in contradiction of the testimony of Brown, who had previously sworn for Fillmore, that he, the latter, made the sale through himself as agent; evidence that, when the Company bought, the ties belonged to Bennett, gave consistency to its theory of

a purchase from him, and though a further stage of the case may show that such evidence was superfluous, it will not in this disclose a ground for reversal, for superfluity in evidence is never a ground for reversal; hence all the testimony so objected to, was competent.

Bennett, a witness for the Company, admitted on cross-examination that he had given to the Company a bond of indemnity against the payment to him of the price, so that he was the real defendant; on his re-examination he produced the bond, and it was put in evidence against an objecttion for irrelevancy. Fillmore had called out the fact that such bond had been given, and certainly could not complain of the production of the instrument which confirmed the fact which he had sought to establish. Exceptions were taken for incompetency and irrelevancy to the admission, on the part of the company, of evidence that it paid Bennett for the ties; the evidence was objectionable, because it had no tendency to support the general denial; like exceptions were taken to the admission, on the part of the Company, of evidence to show that Bennett, having authorized the payment to Fillmore of the price stipulated in what was claimed to be the Bennett sale to the Company, revoked the authority; and the evidence was in like manner objectionable. Exceptions for incompetency were taken to the 18th interrogatory and its answer, contained in the deposition of Clark, a witness for the Company; the question was whether the ties were purchased by the Company of Fillmore, and was answered that they were not; the question was objectionable, because it permitted the witness to state the very conclusion of fact involved in the issue; he had, however, previously testified that he purchased the ties through Brown with the understanding that the latter was Bennett's agent for the sale of them, and that they then belonged to Bennett, showing that the answer was a mere mental conclusion, based upon facts which he had already and properly testified to; a like exception was taken to the allowance of a question to Bennett, a witness for the

Company, whether he sold the ties to the Company; he answered that he did; the question was objectionable, but his other evidence shows that this answer was merely a mental conclusion, in like manner based upon facts which he had already and properly testified *to*; but this improper evidence would not have misled the jury, if the question, whether Fillmore made the sale, was to be submitted to it, and was therefore in that view harmless, and, if that question was not to be submitted to it, the evidence was simply superfluous, encumbering the record; and in either view its admission is not ground for a reversal. This disposes of the exceptions, taken to the admission of evidence on the behalf of the defendant in error; and the entire evidence in the case stands, as it was introduced. What was its effect, is the next inquiry.

It was conceded by Fillmore that, if he made the sale, he made it upon a title derived from Bennett shortly before he sold. His only witnesses were himself and M. C. Brown. The substance of their evidence on the subject of title is,— that Brown was the agent of Fillmore in respect to the ties, and, as such, sold them to the Company on or about May 1, 1872, at 22½ cents apiece, or at a gross of $3,783.60; was at the same time, and before and afterwards Bennett's agent respecting the ties, and, as such, sold them to Fillmore at 18 cents apiece, or at a gross of $3,026.88; that the sale to Fillmore was made about two days before that to the Company was made; and that the negotiations for this last mentioned sale continued from two to three days; also that Bennett was not present at either of these sales. There is no evidence that Bennett knew of either of these alleged sales or of their negotiations, till after they had been made; had he learned of them, while in progress, from Fillmore or Brown, Fillmore could have shown it upon the trial, and it was his right and for his interest to have done so; he offered no proof upon the subject, and it must be assumed that Bennett learned nothing from them of the matter, while it was proceeding; that this ignorance on Bennett's part

becomes a further element in the substance of the testimony of Fillmore and Brown,—it becomes such further element in, because it gives character to it.

It is upon this transaction that Fillmore claims to have derived the title, on which he bases his alleged sale to the Company. What does the transaction import? It imports that the alleged sales to and by Fillmore were one transaction, and that Brown, in conducting them, was acting in the double capacity of agent for and against Bennett.

This, as matter of law, vitiated the sale to Fillmore, if there was one. It further imports, by the facts of its oneness, of Brown's so acting as agent, the proximity of the sales, the large difference between the prices, and the second being for an improved price; that, when selling for Bennett, Brown knew of the opportunity of obtaining the advanced price from the Company—that he knew of it by conducting the negotiation with the Company for the price, that the sale to Fillmore, or to the company by way of Fillmore, was intended to give to the latter the benefit of the advance, and the sale to him was to take effect, or to stand, in case a sale to the Company should be effected; in short, that he was selling for Bennett against his interest, and in the interest of his vendee. This, as matter of fact, vitiated the alleged sale to Fillmore.

Thus in either of its views the transaction established the fact that the sale to Fillmore was void as to Bennett, and left his title unaffected. Is it proper to predicate the term, "established," of this evidence furnished by Fillmore's witnesses? Had the evidence been introduced through other witnesses by the Company for the purpose of impeaching his title, and contradictory evidence been introduced by him, the jury alone could have deduced the result; but there was no contradiction on the subject; his witnesses supplied the entire evidence upon it, and in part for the purpose of showing title in himself from Bennett, and so sustaining his theory that he sold the ties to the Company, and all in that connection. It was direct, strong and clear, and had

no tendency, other than to establish the fact, that the title remained in Bennett as before ; this was its necessary and legitimate conclusion. As Fillmore's witnesses established this fact, he could not ask that it be left to the jury to find against their evidence that there was no such fact. A party may not complain that he is held to the effect of the evidence which he vouches for, by producing the witnesses who give it. Therefore, the result at this point of the trial was that whichever party, Bennett or Fillmore, was the vendor to the Company, the title at the time of the sale was in Bennett.

Let us next ascertain how the question, as to who was that vendor, stood at the close of the testimony. It was mutually admitted that Brown acted as agent for the vendor, and Clark as agent for the vendee. It was not denied, and was virtually admitted by Fillmore that the following documents, relating to the ties, were exchanged in the course of the only sale, and the very sale, that was made to the Company, and were genuine and correct. These were the documents :

LETTER FROM FILLMORE TO CLARK.

LARAMIE, April 17, 1872.

S. H. H. CLARK, ESQ., A. G. Supt.: —

DEAR SIR—Mr. Brown of this place, attorney for Bennett, offers to sell the Bennett ties, lying at Port Steele, for 35 cents apiece, and give the Railroad Company ample security to defend any claim made by Davis and associates on the same, which I am positive he can do, for the reason that Davis and associates never had any legal claim upon them, they having been made by Bennett without having any contract whatever with Davis and associates. As regards the Bennett ties, they are much better than the ties at Laramie and Wyoming will average. There is about 16,000 of the Bennett ties, to which I refer.

Yours truly,

L. FILLMORE.

### TELEGRAM FROM BROWN TO CLARK.

LARAMIE, April 30, 1872.

S. H. H. C.

Will sell at 22½, if you will move ties at once. All can be saved, if you will use energy and promptness. Answer.

M. C. BROWN.

---

### LETTER FROM BROWN TO BENNETT.

LARAMIE, May 20, 1872.

E. W. BENNETT, ESQ., Port Steele.

DEAR SIR—Your letter received. You do not say whether voucher shall issue to Fillmore or .not. Clark thought it should be so issued, but .desired you to say that you are satisfied with that arrangement. Of course Company wont pay for 30 or 40 days, but will issue voucher at once for them. Are altogether 16,800 ties. Mr. Fillmore proposes to pay you for that number, if Clark will issue voucher for that number.

M. C. BROWN.

---

### LETTER FROM BENNETT TO BROWN.

FORT STEELE, WYO. TER., May 22, 1872.

M. C. BROWN, Laramie City.

Yours of the 20th inst. is at hand. The voucher can issue to Fillmore, of course. That is the understanding I had with Clark at Rawlings. I do not know anything about Fillmore, but suppose it is all O. K. If you say that it is all right, I am perfectly satisfied: but, as I wrote you, I want the money as soon as possible. Please write me, when I can expect to get it. I shall look to you to settle with me.

Yours truly,

E. W. BENNETT.

LETTER FROM CLARK TO BROWN.

OMAHA, (Neb.) May 27, 1872.

M. C. BROWN, ESQ., Attorney, etc.

DEAR SIR—Yours of the 23d inst. duly received. The voucher for Bennett ties has been audited, and will be paid, when called for. Same was made in favor of L. Fillmore, Esq., as per yours and Bennett's instructions.

Yours truly,<br>S. H. H. CLARK.

Of these documents some precede and lead to and the rest succeed and rest upon the contract of sale. By the first Fillmore calls the Co's. attention to the ties as Bennett's ties for sale by Brown as Bennett's attorney, and all the documents upon their face framed upon the idea, and admit of no other idea, than that, and so virtually declare that the sale was by Bennett, through Brown as his agent, to the Co.; though they do not indicate that it was written, they point altogether to that as the central fact. Had these documents appeared in proof in the first instance, accompanied by these admissions, it would have been incompetent for Fillmore to have introduced parol evidence to show that he, not Bennett, was the vendor; he would have been estopped by the rule that written cannot be contradicted by parol testimony. But, further, on the 15th day of May, 1872, the contract was reduced to writing, executed and delivered to the Co., by Brown as agent for Bennett, and, in so doing, Brown was acting in concurrence with, and at the instance of Fillmore, for such is the clear import of his evidence as Fillmore's witness. The instrument is as follows:

CONTRACT OF SALE BY BENNETT TO THE CO.

Sold to S. H. H. Clark, Assist. Supt. U. P. R. R. for

the Co., what is known as the Bennett ties at Fort Fred Steele—16,832 ties—as reported by Mr. Shankland, Division Superintendent, at 22½, $3,787.20. Please issue voucher to Mr. L. Fillmore for above amount.

E. W. BENNETT.

By M. C. BROWN, his Attorney.

LARAMIE CITY, W. T., May 15, 1872.

According to the above stated principle, and by the no less rigid principle, that a written contract cannot be varied by parol, Fillmore would have been estopped from introducing the evidence. The real evidence was introduced before these documents appeared in the case; the force of the principle is the same; they controlled, and, virtually struck out that evidence. Here it is to be observed that these instruments were introduced by the Company, and in the rebuttal no evidence was made to impeach them. Thus at the close of the evidence it had become an established fact in the case that the sale to the Company was made by Bennett, and therefore not by Fillmore. As the fact was no longer open to dispute by him, it had ceased to be a question, and was not open to the jury; the jury is neither needed, nor can be allowed or asked to enquire as to the existence of an ascertained fact.

Testimony was introduced by Fillmore to show that Bennett ratified the alleged sale to him. Assuming that Bennett ratified, that did not tend to show that he did not, and that Fillmore did, sell to the Company; nor did it change the status of the Company, as Bennett's vendee, making it Fillmore's vendee; its only effect was to transfer to Fillmore a right to the price due by the sale from the Company to Bennett; and therefore to establish in Fillmore against the Company, a claim essentially different from that which is alleged in his defense. The testimony intended to show the ratification, was therefore incompetent for the purpose. Here it will be instructive to observe

some extrinsic evidence, connected with and pertinent to the documents, though not necessary to this interpretation, nor material to their effect.

Clark testifies that he negotiated with Brown as the agent of Bennett, and understanding that he was such agent, and had no knowledge of any connection of Fillmore with the ties in respect to the purchase by the Company from Bennett, except what is contained in Fillmore's letter of April 17, 1872, nor had any connection with him in the matter, except by that letter and his reply to it of April 22, 1872. The letter of April 17 contains no indication that Fillmore had, or was to have any interest in the ties, or in the disposition of them, and no inference can be drawn that Clark's answer contained any : the documentary evidence verifies this statement. In his evidence, given in the opening, as a witness for Fillmore, Brown testifies that he was Bennett's agent for the sale of the ties, as such sold them to Fillmore, and forthwith resold them, as Fillmore's agent, to the Company:—evidence, which in the absence of the documents, does not indicate whether in the resale he did or did not disclose to the Company the alleged agency for Fillmore, and is equally consistent with either supposition; in the light, however, of the documents it would be false if intended to mean that this agency was, and true if intended to mean that it was not disclosed; upon the duty of the court to reconcile the different parts of the testimony— even a given part in the abstract, equally bears diverse interpretation—this part of Brown's evidence must be taken to mean, that upon the supposed resale he did not disclose his agency for Fillmore.

In the rebuttal Brown again testifies, but does not question the above quoted evidence of Clark, which had in the meantime been given; this silence is acquiescence, and verifies Clark's statement, that, during the negotiations of the sale, he had no knowledge of Fillmore as a party to it. If I have correctly interpreted the evidence adduced by Fillmore as to the agency of Brown in transferring to and

from him, and Brown did so sell to and for him, these two sales were correct transactions as to Bennett and the Company, intended to secure to Fillmore the excess on the actual and ostensible sale, which was made to the Company, of all above eighteen cents a tie; the purpose is obvious.

We come now to the requests to charge, and the charge. It was the right of the plaintiff below, that the jury should be instructed to return a verdict for the amount claimed in the petition. Therefore every rejected request made by the defendant below, proposed a false issue to the jury, and was properly rejected. The requests on the part of the plaintiff below, the allowance of which was excepted to, also proposed false issues to the jury, and were therefore erroneous, but because they asked for less than that party was entitled to, the other side cannot complain; the charge was erroneous because it did not direct a verdict for the Company, as above explained, but submitted to the jury for ascertainment, a matter already ascertained. Fillmore may not complain of the charge for two reasons—one, that the case was put to the jury less favorably for the Company, and more favorably for himself than it should have been, and he has suffered nothing by it; the other, that the exception to the charge is to it as a whole, not specifying any particular part or parts as objected to, or the ground or grounds of objection. As the verdict is what it should have been, though erroneously reached, it must stand, and the judgment below affirmed, with costs.

Judgment affirmed.