## CITY OF COLUMBUS *v.* OGLETREE.

1. The territory added to the City of Columbus by the act of 1887, providing for the extension of its corporate limits, became, after that act went into effect, a part of the city for all municipal purposes; and notwithstanding the provision in the fourth section to the effect that, for twenty years from the passage of the act, only such sums as may arise from taxes assessed in that territory shall be expended in the maintenance, improvement and protection thereof, unless in the discretion of the mayor and council it may be desired to so expend a greater sum from the general treasury of the city, it is nevertheless the duty of the municipal authorities to keep the streets and sidewalks of the annexed territory in a safe condition for public use, and the fact that they did not have funds available for this purpose derived from the taxes assessed therein will not be held a sufficient excuse for a failure in this respect.
2. The duty of construing a pertinent city ordinance which has been introduced in evidence, and of explaining its meaning to the jury, devolves upon the judge; and a request in effect asking that its construction be submitted to them was properly refused.

3. An ordinance making it the duty of policemen to report to the lieutenants of police all footways, bridges, and sidewalks requiring repairs, necessarily renders it incumbent on the lieutenants to report upon the same to the authorities whose duty it is to have the needed repairs made; and therefore under such an ordinance notice to a policeman or a lieutenant of a defective or dangerous place in a sidewalk is notice to the city.

4. A charge upon a mortality-table, which in substance instructed the jury to ascertain the yearly amount of the plaintiff's diminished capacity to earn money, if any, multiply it by the number of years he might be expected to live, and then reduce the gross amount to present value, was not erroneous; the charge as to this table being in other respects appropriate, and on the whole sufficiently guarding the rights of the defendant.

5. There was no error in admitting in evidence the testimony of a deceased witness as embodied in an agreed brief of the evidence introduced at a former trial of the same case. This would not, however, prevent the opposite party from proving additionally other testimony given by this witness at that trial and not included in the brief.

6. Evidence that the "authorities at the court-house" were notified of a defect in a city sidewalk did not, of course, necessarily prove notice to the municipal authorities, but was admissible to be considered in connection with all other evidence on the subject of notice. If the jury believed that the "authorities" referred to were the county officers, they clearly understood that this particular proof was of no value to the plaintiff.

(*a*) The judge's remark that he had not been notified of the defect, made in mere pleasantry while the objection to the above evidence was being argued, was harmless and presented no matter for serious exception.

7. A book purporting to contain the official minutes of a city council was, in the absence of the clerk of council for providential cause, he being the proper custodian of the minutes and records kept by the council, admissible in evidence upon proof showing that the book in question had been brought from the clerk's office by the city treasurer who was acting in the clerk's place during his absence, and that the official signature of the clerk appeared upon the pages of the book in connection with what purported to be the proceedings of the council.

8. In order to authorize the setting aside of a verdict upon the ground that it was arrived at by chance, it must affirmatively appear that the jurors bound themselves in advance to arrive at the verdict in this manner, and that they in fact did so. This did not in the present case appear with sufficient certainty to authorize this court to overrule the discretion of the trial judge in declining to grant a new trial on that ground.

LUMPKIN, P. J., dissenting as to the last note. Proof showing that eleven small pieces of paper upon which were written amounts varying from $100 to $5,000 were found in the jury-room after the verdict was rendered, together with another piece of paper upon which like amounts and one other amount were written down, added and divided by twelve, giving as a result $2,537.50 (this being the precise amount of the verdict), in connection with the fact that though the jurors were competent in sup-

port of their verdict to explain these facts, not one of them was called and sworn to do so, makes a prima facie case that the verdict was arrived at by chance and under an agreement to fix its amount in the manner indicated; and this being so, it ought to have been set aside.

Argued April 20, 21, — Decided August 7, 1897.

Action for damages. Before Judge Butt. Muscogee superior court. May term, 1896.

*Francis D. Peabody*, for plaintiff in error.
*G. Y. Tigner* and *Blandford & Grimes*, contra.

Cobb, J. Ogletree brought his action against the City of Columbus, for damages alleged to have been sustained from falling into a hole in the sidewalk upon a public thoroughfare in the city, it being alleged that the hole had been carelessly and negligently left open by the city. The jury returned a verdict for the plaintiff, and the defendant excepted to the overruling of its motion for a new trial.

1. The defendant filed a plea alleging that the place at which the plaintiff claimed to have been injured was within the territory which was annexed to the City of Columbus under the provisions of an act approved September 7, 1887 (Acts 1887, p. 491); that by the terms of such act, "for a period of twenty years from the date of such annexation the mayor and council shall be required to expend in the maintenance and improvement of said annexed territory and in the protection of the same, and in the establishment of public schools therein, only such sums as may arise from taxation or otherwise in said territory, unless, in the discretion of such mayor and council, a greater sum may be desired to be so expended from the general treasury of said city"; that all sums received by taxation or otherwise from the annexed territory during the year in which the injury occurred were expended by the city in the maintenance and improvement of that territory and the protection thereof and in the establishment of schools therein, and to have done any further work on the streets and sidewalks of the same would have necessitated an additional expenditure of money from the general treasury of the city, which the mayor and council did not see proper to make.

The territory added to the City of Columbus by the act of

1887 became, after that act went into effect, a part of the city for all municipal purposes, and the duty rested upon the municipal authorities to keep the streets in the annexed territory in a condition reasonably safe for travel; and the negligent failure on their part to discharge this duty would render the city liable to any person injured thereby. Under the provisions of the act relied on as a defense, the city, in the absence of funds raised by taxation in the annexed territory, has the power, in their discretion, to use general funds in the treasury for municipal purposes within the annexed territory. It is, therefore, no answer to a claim for damages growing out of the negligent failure to repair the streets in the annexed territory, that the city authorities did not see proper to exercise a discretion which, properly exercised, would have prevented the injury to the plaintiff.

2. The construction to be placed upon a city ordinance which has been introduced in evidence is a question for the court; and a request which in effect submitted to the jury the question of the proper construction to be placed upon the ordinance was properly refused.

3. An ordinance of the city, making it the duty of policemen to report to the lieutenants of police all footways, bridges and sidewalks requiring repairs, imposes upon the lieutenants of police the duty to report upon the same to the city officials whose duty it is to have the needed repairs made. It therefore follows, that notice to the city of a defect in the streets could be shown by proving that such defect was known to one of the policemen who are the recognized mediums of communication, through the lieutenants of police, to the city officials having charge of the streets. When this case was here before (96 *Ga.* 177), it was held that, in the absence of an ordinance making it the duty of policemen to report defects in the streets of a city, notice to the policemen was not necessarily notice to the city. On the last trial such an ordinance having been introduced in evidence, the case is directly within the principle referred to in the opinion of Justice Lumpkin in the former decision in this case.

4. The charge of the judge upon the mortality-tables was

substantially correct.   *F. C. & P. R. R. Co.* v. *Burney*, 98 *Ga.* 1.

5. The testimony of a witness who had been examined on the former trial of the case, but who had since died, which had been embodied in a brief of the evidence filed with the motion for a new trial, and which was correct and approved by the judge, was admissible on the trial of the case. Civil Code, § 5186; *Smith* v. *State*, 28 *Ga.* 19; *Adair* v. *Adair*, 39 *Ga.* 75; *Lathrop* v. *Adkisson*, 87 *Ga.* 339. If, however, it was shown that the witness had testified to other matters not embraced in the corrected brief, it would be allowable to show that such other testimony was given in addition to that contained in the brief.

6. Where there was evidence that the "authorities at the court-house" were notified of the defect in the sidewalk, this evidence did not conclusively establish notice to the municipal authorities; but the evidence was properly admitted to be considered in connection with the other facts in the case. If, under all the facts submitted, the jury believed that "the authorities" referred to were the officials of the county and not the municipal authorities, they must have understood that proof of notice to the county authorities was of no value to the plaintiff.

That the judge, while the objection to this evidence was being argued, remarked by way of pleasantry that he had not been notified of the defect, could not possibly have harmed the defendant; and the same presents no matter for serious exception or consideration.

7. The official minutes of the city council may be proved by the production of the original book of minutes identified as such by the clerk of the corporation and shown to have come from his custody. *Metropolitan Railroad Co.* v. *Johnson*, 90 *Ga.* 500. Where it was shown that the clerk of the corporation was absent from his office from providential cause, and that he was the custodian of the minutes and records kept by the council, and that the witness bringing the book of minutes into court was the city treasurer who was acting in the clerk's place during his absence and in such capacity came into possession of the book, and it further appeared that the book of-

fered in evidence had upon its pages the official signature of the clerk, in connection with what purported to be the proceedings of the council, there was no error in admitting the book in evidence.

8. It was contended that a new trial should have been granted, "because the verdict of the jury was arrived at by chance, and not from a consideration of the evidence, and not according to the rules of law." In support of this ground an affidavit was attached, which was as follows: "In person before the undersigned appeared R. W. Ledsinger, who being sworn, says, that he is a deputy-sheriff of Muscogee county; . . . that, . . while the jury trying ['the present case] was out in the jury-room considering their verdict, they requested deponent to furnish them with some paper. He procured some . . paper . . and furnished it to them, and deponent believes that the sheet of paper hereto attached . . was given by him to the jury. Deponent says that no other jury used the jury-room on [that date]; that on [the next morning] he went . . to the jury-room where said jury had been; he found on the table in the jury-room eleven pieces of paper, each with a number thereon, and the sheet of paper with twelve numbers thereon added together and divided by 12." It appears from an examination of the paper referred to, that twelve numbers, ranging from $100 to $5,000, were written down, and that the average was ascertained and returned as their verdict, which amounted to $2,537.50.

We apprehend that no one will dispute the proposition, that if the jurors previously agree to obtain what is called a "quotient" verdict, and agree to abide by the result, whatever it may be, without reserving to themselves the liberty of dissenting, the verdict should be set aside. On the other hand, if this method is adopted merely for the purpose of arriving at a reasonable amount, without binding the jurors in advance by the result, and the sum so ascertained is afterwards agreed upon as the deliberate judgment of the jurors, the verdict should stand. This view is abundantly sustained by authority. See in this connection 2 Thomp. Trials, § 2602, and cases there cited. It is true that some go so far as to

hold that if the verdict itself be correct in amount, without regard to the manner in which it was reached, it will be permitted to stand. Fillmore v. Union Pac. R. R. Co., 2 Wyo. 94. It has also been held, that if the jury subsequently assent to and ratify their verdict in open court, though it may have been illegally arrived at in the first instance, the verdict should stand. Wiley v. Inhabitants of Belfast, 61 Me. 569. But we do not go to that extent. We rest our decision on the sole ground, that the facts in the present case do not make out a prima facie case that the jury agreed in advance to be bound by the result reached. The test is, did the jurors bind themselves to abide absolutely by the result reached? In the present case, is there evidence sufficient to establish that such was the agreement?

An examination of some of the cases where a similar question has been considered will not be unprofitable. It must always be borne in mind that every presumption is in favor of the conduct of the jury, and the regularity and legality of the verdict. Lee v. Chute, 10 Nev. 151; 1 Bibb, 399; 2 Dallas, 55.

In the case of Baker v. Burnett, 20 Tenn. 399, an affidavit of one of the jurors was received, which was, in substance, as follows: that he was one of the jurors who tried the case; that the jury differed as to the amount to be returned; finally each one suggested an amount, and one of the jurors divided the sum of the amounts proposed by twelve, and the result thus ascertained was returned as their verdict. He further stated that he did not agree to the calculation, but was deceived in the same. The court refused to set it aside, holding that this affidavit did not show a state of facts which would warrant them in concluding that the jury agreed in advance to be bound by the result.

In Barton v. Holmes, 16 Iowa, 258, an affidavit of one of the jurors who tried the case was as follows: "I, Curtis Wells, on my oath say that the paper hereto attached is the same paper used by me as foreman in footing and ascertaining what the average amount of the verdict in said case would amount to, in case it was adopted; that I was a juror in said cause." The paper referred to was a paper on which were

written 12 sums ranging from 50 to 1,000 dollars and divided by 12, the amount so ascertained being the precise amount of the verdict. It was held that, prior agreement to be bound being the test, the verdict should stand.

The case of Wiley *v.* Inhabitants of Belfast, 61 Me. 569, cited supra, is directly in point. The court held, that "a paper found in the jury-room after the jury have left it, upon which 12 different sums, ranging from nothing to several thousand dollars, are set down and added together and the amount divided by 12, the quotient being the precise sum for which the verdict was rendered, does not furnish sufficient cause for setting aside the verdict. It can not be concluded from this alone that each and all the jurors did not agree to the verdict rendered."

Another case directly in point is the case of St. Clair *v.* Mo. Pac. R. R. Co., 29 Mo. App. 88. Here the defendants presented affidavits tending to show that, soon after the jury returned the verdict, there was found on the table of the consultation-room a slip of paper indicating that 12 different sums had been set down, added together and then divided by 12, the quotient corresponding with the verdict; that one of the jurors admitted that this was the way in which the verdict was reached. The court held that this was not sufficient to impeach the verdict.

In Grinelle *v.* Phillips, 1 Mass. 540, ten of the jurors suggested amounts, two refusing to name any. The average was ascertained and returned as the verdict. And, notwithstanding one of the dissenting jurors made affidavit that he thought it his duty to coincide with the others, but that he "never in his mind approved of it," the court allowed it to stand.

In McMurdock *v.* Kimberlin, 23 Mo. App. 523, a paper was found in the jury-room with 12 sums written down ranging from $1 to $500. The average of these sums was ascertained and returned as the verdict, which amounted to $362.75. The court ruled that it could not be concluded from this alone that the jury agreed in advance to be bound by the result.

"Nor does the finding of a paper in the jury-room, on which there is a computation indicating that this method is resorted

to, afford good ground for new trial, because it does not show that there was agreement." 2 Thomp. Trials, § 2603.

That the jurors were not called to support their verdict in the present case can not be urged as a reason for setting it aside. A juror can, and should, be heard to sustain his verdict, when it is shown prima facie to be irregular and invalid; but there is no necessity to call the jurors until the verdict has been in some way discredited. The evidence offered to attack the verdict was insufficient for the purpose, and an unimpeached verdict needs no support from jurors, or from any other source. We readily assent to the proposition that "nothing short of a free and deliberate finding made upon the conscientious conviction of the judgments of all of the jurors will satisfy the law," and we decline to reverse the trial judge in this case, for the reason that nothing has been shown which is necessarily inconsistent with the conscientious discharge of duty by the jurors. Jurors are sworn officers of the law, and their findings are environed with all the presumptions which surround the acts and conduct of persons who are discharging under oath the duties cast upon them by the law of the land. He who impeaches or brings in question the regularity of their conduct or integrity of their motives must bring clear, satisfactory, and unequivocal proof.

The trial judge did not see fit to exercise his discretion and set aside the verdict in this case, and for the reasons stated we can not say that he erred.

*Judgment affirmed. All the Justices concurring, except*

LUMPKIN, P. J., dissenting. The view entertained by the majority as to the point of difference between them and myself is, I admit, well sustained by the authorities cited in the opinion filed by Mr. Justice Cobb. In my judgment, some of these authorities, though eminently respectable, go too far and should be disregarded. There are others, equally respectable, to the contrary.

There is not a particle of doubt that the amount of the verdict rendered in the present case was arrived at by adding together twelve numbers and dividing their sum by twelve. The evidence, with almost the same degree of probative force,

shows that each of the jurors suggested one of the twelve numbers to be so added and divided. The only question is, did they agree in advance to fix the amount of the verdict in this way? I think the evidence proves with reasonable certainty that they did. Otherwise, the verdict would hardly have been for just such a sum as $2,537.50. Upon the theory that the jury agreed at the outset to find for the plaintiff the exact sum reached by the quotient process, the presence of the $37.50 in the verdict can be easily accounted for. In the absence of such an understanding, how came this fractional amount to remain as a part of the finding? What argument or reasoning could have been employed to convince a juror who favored a much smaller verdict that the recovery should have been just $37.50 more than $2,500.00? And coming down to the minutiæ, what logic supported the retention of the 50 cents as a fair and proper portion of the plaintiff's compensation for his injuries? Why did not some astute juror convince his fellows that the verdict should be for $2,537.25?

I do not care to make further suggestions upon this line; and will only add that the affidavit of a single juror, that the verdict was not arrived at by chance and under an agreement to fix its amount in the way indicated, would have put the matter at rest. Jurors can be heard to sustain, but not to impeach, their findings. Civil Code, § 5338. I think the defendant established enough to put the plaintiff upon explanation; and as the latter had abundant opportunity to make it, if the truth of the disputed issue was really on his side, his failure to do so ought to deprive him of the benefits of a verdict which was apparently rendered without fair and conscientious deliberation as to what the amount of it should be.