28698. CROMER & THORNTON INC. *et al. v.* UNDERWOOD.

DECIDED MARCH 20, 1941.

*T. J. Long,* for plaintiffs in error.
*Hewlett & Dennis, T. F. Bowden,* contra.

MACINTYRE, J. Mrs. Edna M. Underwood recovered a verdict for $1933.33 against Cromer & Thornton Inc. and Ralph Coleman. Plaintiffs in error recite in their brief that "the general grounds are abandoned, and the only issues before the court are the assign-

ments of error as contained in the amended motion for new trial." There is no merit in the motion for damages on the ground that the present appeal was for the purpose of delay only.

Movants contend that after the jury retired to the jury-room they were unattended by their deputy sheriff for four or five minutes, that they separated, that some of them mingled with outside persons in the hallway adjacent to the jury-room, and that one of the jurors went into the court-room. To support this contention the movants introduced the affidavit of R. W. Oglesby, the material part of which, in so far as it relates to the question under immediate consideration, was as follows: "Deponent states that he was present throughout the trial of the above-stated case. Deponent says that on the afternoon of March 12, after the court had charged the jury, he observed the jury as they were put in charge of Deputy Sheriff Derrick, and that when the jury was taken to the jury-room across the hallway adjacent to the court-room, in about two or three minutes after the jury had retired to said room, said deputy sheriff was summoned by a member of the jury and requested to get the 'coca-cola man.' Deponent further says that the said deputy sheriff immediately left the jury and went out in the direction of the main lobby of the second floor of the court-house, and was gone for four or five minutes. Deponent states that during the time said deputy sheriff was away seeking the 'coca-cola man' the door leading into the jury-room was open, and a majority of the members of the jury were standing in the hallway and the doorway leading into the jury-room, and mixing and commingling with a number of spectators at the trial of said case, and the plaintiff and the deceased's brother and friends and acquaintances of the plaintiff, whom deponent does not know. Deponent further states that there was considerable conversation in said hallway, the exact character and nature of which deponent can not say, but deponent does say that the conversation engaged in by the spectators and plaintiff, her friends and relatives, was of such a character and nature that it could have been overheard by members of the jury. Deponent further says in this connection that while said deputy sheriff was away seeking out the 'coca-cola man,' one member of the jury left the other members of the jury, who were congregated in the hallway and mixing with the crowd, and went into the court-room and was gone approximately two minutes. The name of this person can not be stated by deponent,

but deponent does say he was a member of the jury trying the case." In her counter-showing the defendant in error introduced the affidavit of one of the jurors, Ward, that "after the jury had retired to their jury-room and closed the door they at no time separated, and that no one discussed the case with them except the individual jurors composing the jury, which was done in the jury-room." This affidavit alone would have raised an issue of fact as to whether the jury ever separated at any time after they retired from the court-room into the jury-room. The deputy sheriff in charge of the jury testified that he took them from the court-room and they went immediately into the jury-room, which was about fifteen feet from the court-room door through which they passed in order to arrive at the jury-room, and that he closed the door to the jury-room and returned to the court-room to get the documentary evidence, and having been requested by the jury to ask the judge if they could have coca-colas, and having gotten an affirmative reply, he immediately returned to the jury-room, gave the jury the documentary evidence, closed the door, and went to get the coca-colas. He did not state how long he was gone. (However, plaintiffs in error's affiant Oglesby stated that the deputy sheriff was gone four or five minutes.) Upon obtaining the coca-colas, the deputy sheriff immediately returned to the jury-room, where he found the door closed just as he had left it. He opened the door and gave the coca-colas to the jury, and then went back to the court-room and obtained a bicycle which was involved in the case, came back to the jury-room, opened the door, handed the bicycle to the jurors, again closed the door, and took his seat in the door of the court-room fifteen feet from the door of the jury-room where he could plainly see the jury-room door, and sat there until the jurors knocked on the door a few minutes later and announced that they had arrived at a verdict. Whereupon he opened the door and escorted them back into the court-room where they announced their verdict.

It will thus be seen, that, under the deputy sheriff's affidavit, the only time it is contended that the jurors separated, as stated in the affidavits adduced in behalf of plaintiffs in error, was the four or five minutes when the deputy sheriff went after the coca-colas. However, as stated above, two of the jurors stated in their affidavits that there was no separation at any time, and Carl J. Underwood, who was the husband of defendant in error, swore, in his

affidavit introduced by the defendant in error that he was present when the jury retired from the court-room to go to their jury-room, and that "he waited in the court-room and sat there on the opposite side of the table from Mr. Kelley and another man, who was said to be Mr. Oglesby. After the jury retired the sheriff asked the court if the jurors could have coca-colas. The jury-room door was closed. The sheriff then left the court-room and came back with the coca-cola man. *The jury-room door remained closed the entire time.* [Italics ours.] When the sheriff came back the door was opened and the coca-cola man furnished and delivered the coca-colas. The sheriff then closed the jury-room door and came back into the court-room and got the bicycle which he took to the jury-room and passed in to the jurors. The jury-room door was closed. He stayed in the court-room and saw the man who was pointed to him as Mr. Oglesby during the entire time of the deliberations of the jurors." Another affidavit by Mr. Kelley contradicted several of the statements made by the affiant Oglesby, whose affidavit was introduced by plaintiffs in error. As to the testimony of Underwood, that the door remained closed the entire time the deputy sheriff went after the coca-colas, the plaintiffs in error argued that it was of no value, because Underwood, from where he was seated, could not have seen the jury-room door through the court-room door at the time of the deliberation of the jury. However, the only thing in the evidence with reference to this matter is that the deputy sheriff sat in the court-room door fifteen feet away from the jury-room door and could clearly observe the jury-room door; and the witness Underwood having positively sworn that it remained closed during this time, in the absence of proof to the contrary, we can not say but that he was testifying to the truth and knew of his own knowledge whereof he spoke. At any rate, there was a clear issue of fact as to whether the jury had separated as contemplated by the law. The judge was the trior, and resolved the issues of fact in favor of the defendant in error; and under such circumstances, unless the judge has clearly abused his discretion, this court will not reverse his decision. No such abuse appears here. "When it was shown to the court that the jury who were charged with the case had dispersed, the onus was on the State [defendant in error] to show that the accused had sustained no injury thereby. If the State fails in this, the verdict is a nullity, and should not be received; or if received, should be set aside

by the court." *Silvey* v. *State,* 71 *Ga.* 553, 554. However, in *Roberts* v. *State,* 14 *Ga.* 8, 16 (58 Am. D. 528), the court seems to have subjoined to this rule the following: "The conclusion from all cases decided in this State is, that . . *any irregularity or misconduct in the jury themselves, will not be a sufficient ground for setting aside the verdict, either in a criminal or civil case, where the court are satisfied, that the party complaining has not and could not have sustained any injury."* In the instant case the judge was authorized to find that there had been no separation of the jurors; and if he so found, the defendant in error naturally did not have to rebut any presumption that might have arisen had such separation occurred. This ground is not meritorious.

Special ground 2 contends that the verdict was arrived at by chance, and is illegal and void under the laws of this State, in that the jury agreed among themselves, before arriving at the amount of the verdict, that they would be bound by whatever amount was reached by the method suggested and adopted. The affidavit of Oglesby, for the plaintiffs in error, relatively to this point, was that he was standing out in the hallway adjacent to the jury-room, and overheard a statement made to the jury by a member thereof, whom the witness knew to be Charles M. Brown, in the following language: "Gentlemen, let's don't stay here all night. I've got a lot of things to do, and I've got to make a speech to-night. Let's all put down on a piece of paper what each man thinks they ought to have, add those figures up, and divide that by twelve and abide the result." The affidavit further said that after this statement was made by said juror the affiant heard no voice in opposition thereto by any member of the jury, and that it was comparatively quiet for four or five minutes, and the next thing the affiant heard was the rap on the jury-room door and the foreman announced that they had reached a verdict. The defendant in error introduced the affidavit of Charles M. Brown, one of the jurors, who specifically denied the statement attributed to him by Oglesby. He then stated what happened as follows: "One of the jurors suggested that they put down the amounts and divide it by twelve, to obtain a basis for a reasonable sum to be paid the plaintiff; that they did so, and the foreman then figured the amounts by adding them together and dividing the total by the line, and the sum of $1933.33 was reached, after which they took a vote to decide whether or not this was a fair and reason-

524

able amount to be awarded the plaintiff, and all the jurors voted and agreed that the amount was a fair and reasonable amount and was their verdict. The foreman then wrote the verdict up." Affidavits of other witnesses disclosed that Oglesby was not in hearing distance of the jury-room at the time he said he heard the statements of Brown. Many of the details of the statements in the affidavit of Oglesby were contradicted by witnesses of the defendant in error, relatively to the matter here discussed, and to the matter previously discussed with reference to special ground 1. Here again there was an issue of fact. If the truth of the matter was as stated by Oglesby, the verdict was void; if the truth was as stated by Brown, the verdict was not void for the reasons assigned. In *City of Columbus* v. *Ogletree,* 102 *Ga.* 293, 298 (29 S. E. 749), the Supreme Court, through Justice Cobb, said: "We apprehend that no one will dispute the proposition, that if the jurors previously agree to obtain what is called a 'quotient' verdict, and agree to abide by the result, whatever it may be, without reserving to themselves the liberty of dissenting, the verdict should be set aside. On the other hand, if this method is adopted merely for the purpose of arriving at a reasonable amount, without binding the jurors in advance by the result, and the sum so ascertained is afterwards agreed upon as the deliberate judgment of the jurors, the verdict should stand. This view is abundantly sustained by authority." Applying this rule to the facts in the instant case, no reversible error is disclosed.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*