# CITY COUNCIL OF AUGUSTA *v.* AUGUSTA-AIKEN RAILWAY AND ELECTRIC CORPORATION.

1. Construction of pertinent municipal ordinances is for the court.
   (*a*) In cases of doubt as to the meaning of an ordinance, the title may be resorted to as furnishing some aid in showing the intention of the municipality.
   (*b*) Where a municipality adopts an ordinance exempting a street-railroad from paving or macadamizing any portion of a city's streets, but the ordinance also provides that the railroad company "shall be required to prepare its tracks to receive and accommodate any such material as may be determined upon by said city," such language does not authorize the city council to adopt an ordinance requiring the street-railroad company to prepare its tracks, etc., and further to pay for and place within the same such material as required by the city authorities.
2. The court did not err in granting the injunction, and in denying the mandamus absolute as prayed for in the cross-action.

No. 1596. SEPTEMBER 28, 1920.

Injunction, etc. Before Judge Hammond. Richmond superior court. June 30, 1919.

The Augusta-Aiken Railway and Electric Corporation brought its petition against the City Council of Augusta, to enjoin the city from stopping the operation of its cars by the use of the police of the city, or from in any manner interfering with such operation. From the record it appears that the City Council of Augusta decided to pave a street in that city known as Walton Way, a part of which street had formerly been in the Village of Summerville, but had subsequently been incorporated with the City of Augusta, and is now a street wholly within that city. In pursuance of its purpose to pave the street the city engineer notified the railway company to place its tracks between Fifteenth Street and Monte Sano Avenue in condition to receive pavement according to the manner specified in a certain blue-print which accompanied the notice. In accordance with this notice the railway company employed a contractor to excavate the tracks so as to receive the paving. One of the railway tracks was removed and the road-bed excavated so as to receive grouted stone and concrete called for by the specifications. The city refused to place the material called for by the specifications, insisting that it was the duty of the railway company to do so, which the latter declined to do. The city council thereupon adopted a resolution declaring that the railway company

had failed to put its tracks in such condition as to receive concrete pavement such as was about to be placed in the street, and had failed to ballast the cross-ties of the railway, and had rendered the street dangerous for travel, by reason of its tracks not being of even grade with the street, thus rendering it useless and dangerous for ordinary traffic.  The resolution further provided that if after ten days the railway company did not comply with the notices and specifications served upon it, the mayor was authorized and empowered to direct the chief of police, and so many of the officers of the police force of the City of Augusta as might be necessary, to prevent, by such force as necessary, the railway company from crossing and using that portion of Walton Way as was unfit for use and dangerous to traffic along the street.  After the passage of this resolution the mayor of the city notified the railway company that unless its tracks, within ten days from that date, were prepared to receive the six-inch concrete pavement and were ballasted according to specifications which had been furnished it, the railway company would not be permitted to use the track between certain points.  The railway company thereupon filed its petition for injunction against the city council, and obtained a temporary restraining order to prevent the city from carrying into effect its threat to stop the operation of the cars of the railway company by the use  of the city police force.  In its answer to the petition of the City of Augusta prayed for a mandamus to compel the railway company to place the grouting, concrete, etc., under its tracks at its own expense.  Upon the interlocutory hearing the court continued the temporary restraining order, and refused the mandamus, in the following judgment:  " After argument heard upon the pleadings and evidence in this case, I have reached the conclusion that the plaintiff, the Augusta-Aiken Railway & Electric Corporation, is under no obligation to procure or place in or under its track crushed rock, grouting, concrete, or other material required by the blue print and specifications served upon it by the defendant, the City Council of Augusta; and that no such duty is placed upon the plaintiff by § 4 of the ordinance of the City of Augusta of April 6th, 1896, amending the ordinance of February 13th, 1890, which declares 'that whenever the said city shall determine to pave any of its said streets on which said company's tracks are or may be located, with belgian blocks, asphalt, granite,

or other material, then said railroad company shall be required to prepare its track to receive and accommodate any such material as may be determined upon by said city.' It is therefore considered, ordered, and adjudged, that, until the final hearing or further order of the court, the restraining order heretofore granted be continued, and the defendant, the City Council of Augusta, its officers, agents, and servants be and they hereby are restrained and enjoined from carrying into effect the resolution of the City Council of June 9th, 1919, and from stopping the cars of petitioner, or in any way interfering with their operation, by police force or otherwise. Ordered further, that the mandamus prayed for by the defendant in its answer to the plaintiff's petition be and the same hereby is denied." To this judgment the City Council of Augusta excepted, and brought the case to this court for review.

*Archibald Blackshear* and *Callaway & Howard,* for plaintiff in error.

*Wright & Wright and Jackson,* contra.

HILL, J. (After stating the foregoing facts.)

1. As we view this case there is but one controlling question, viz., whether under a proper construction of the ordinances of the City Council of Augusta and the Village of Summerville, and the act of 1916 (Acts 1916, p. 549), the railway company is liable for the cost of paving the foundation and surface under and between its tracks on Walton Way in the City of Augusta, according to the plans and specifications adopted by the city for the improvement of this particular street, which plans were served upon the railway company. It is contended by the city that the railway company is liable for such cost under those ordinances and certain legislative authority, the act of 1916, supra. It is necessary, therefore to set out so much of these ordinances and acts as may be necessary to the correct decision in the case. By an ordinance approved April 6, 1896, amending an ordinance passed February 13, 1890, it was provided in section 3 that "the exemption given the Augusta Railway Company, and its reorganized or successor company, from constructing and keeping in repair any of the streets or parts of streets, shall remain of force not exceeding the term of its present charter, and in consideration of which the Augusta Railway Company, or its reorganized or successor company, agrees to operate its cars on the Turpin Hill division as far as Marbury

Street at intervals of not less than twenty minutes," etc. Section 4 of the same ordinance provides that "Whenever the city shall determine to pave any of its said streets on which said company's tracks are or may be located, with belgian blocks, asphalt, granite, or other material, *then said railroad company shall be required to prepare its tracks to receive and accommodate any such material as may be determined upon by said city.* [Italics ours.] On April 25, 1896, an ordinance was adopted by the Village of Summerville, similar to that by the City Council of Augusta, in section 1 of which ordinance it was provided that "The said Augusta Railway Company, its reorganized or successor company, in consideration that it has promised and covenanted with said Board of Commissioners to operate at least a twenty-minute schedule on the line of its cars between said Village and the City of Augusta, *shall be exempt from paving, constructing, or maintaining any portion of the streets in said Village* [Italics ours] ; this exemption to continue for and during, but not exceeding, the term of the present charter of said company, and in no event is it to be construed as a license or grant in perpetuity;" etc. The latter ordinance also provided that "whenever said village authorities shall determine to pave or macadamize any of its said streets on which the tracks of said company are or may be located, *then said railroad company shall be required to prepare its tracks to receive and accommodate any such material as may be used in constructing said streets as the said village authorities may determine upon."* [Italics ours.] This portion of the street in the Village of Summerville was subsequently taken into and became a part of the streets of the City of Augusta. No question is raised as to the authority of the municipalities to make the above contract. The act of 1916 (Acts 1916, p. 549) provides that "a railroad company now having, or which may hereafter have, tracks running through or across streets or public alleys of said city so improved, shall be required to pay to the City Council of Augusta the cost of macadamizing or otherwise paving, as the City Council of Augusta may direct, the width of its tracks and three feet on each side of every line of its track," etc. The act of 1887 (Acts 1887, p. 566, § 4) provides that any street-railroad having tracks running through the streets of Augusta "shall be required to macadamize or otherwise pave, as the city council may direct," etc. Neither of the above

acts applied to the Village of Summerville. The question, therefore, is whether under the ordinances and acts the City of Augusta can require the railway company to pay the cost of placing the foundation and surface under its tracks in the street in question, in accordance with the plans and specifications adopted by the City Council of Augusta, which were served upon the railway company. It is argued by counsel for the railway company that to prepare its tracks to receive and accommodate such material, as contemplated by the ordinances above set out in part, does not impose upon it the expense of placing beneath its track a substructure of grouted stone and cement as required by the city council, but that the ordinances only require it to excavate its track sufficiently, and bring it to the proper grade and level, so that the city, at its own expense, may place the material determined upon by it as a part of its proposed paving plan.

The duty of construing the ordinance devolved upon the judge. *City of Columbus* v. *Ogletree,* 102 *Ga.* 293 (2), 296 (29 S. E. 749) ; 2 McQuillin on Mun. Corp. 1733, § 810. And it has been held that the rules of construction for an ordinance are the same as for a statute. Ib. In arriving at the intention, the facts and circumstances surrounding the adoption of the ordinance exempting the railway company from paying any part of the paving cost, as well as the old law, may be considered. The record shows that the receiver of the Augusta Railway Company, before the adoption of the ordinances in 1896, addressed a communication to the Board of Commissioners of Summerville and the City Council of Augusta, stating that the company was insolvent and in the hands of a receiver and was about to be sold and reorganized, and that the failure of the company was due to the large expense put upon it in paving the streets of Augusta, and that it would be impossible to reorganize the company unless it was relieved of this burden. It appears also that in pursuance of this communication the Village of Summerville adopted the ordinance relieving the company from any cost of paving the streets, and the City Council of Augusta passed a similar ordinance. It appears that prior to the passage of these ordinances the railway company had been required to pave the track area. In cases of doubt the title of an act may furnish some aid in showing what was in the mind of the legislature. U. S. *v.* Palmer, 3 Wheat. 610, 631 (4 L. ed. 471) ; *Etowah*

*Milling Co.* v. *Crenshaw,* 116 *Ga.* 406, 408 (42 S. E. 709). So, the title of an ordinance may be considered in its interpretation. 2 McQuillin Mun. Corp. 1737, § 812. Referring to the title of the Augusta ordinance in which the exemption above referred to appears, it will be seen that the purpose of the ordinance was to amend the former ordinance which required the Augusta Railway Company " to construct and keep in repair the streets used by said company for its tracks;" and the title of the Summerville ordinance is " to exempt the Augusta Railway Company, its reorganized or successor company, from street paving or street building in the Village of Summerville, on certain conditions." We think these titles clearly show that it was the purpose of the City Council of Augusta and the Village of Summerville to exempt the railway company from street-paving. And we do not think that the words which require the company to " prepare " its tracks to " receive and accommodate " such material as might be selected by the city militates against this view. In view of the foregoing, the parts of the ordinances which provided that whenever the city decided to pave the streets the company should " be required to prepare its tracks " at any and all times for receiving any kinds of material that the city might see proper to put in it, did not mean that it should make large outlays for street building or paving, as contended for by the city. On the contrary we think it was intended only that the railway company should excavate, grade, and level its tracks to receive the grouted stone and concrete which might be purchased and placed therein by the city. From what has been said above it follows that the court did not err in granting the injunction; nor in refusing the mandamus absolute prayed for in the cross-action.

*Judgment affirmed. All the Justices concur.*