71273. BOARD OF ZONING ADJUSTMENT OF ATLANTA
v. FULTON FEDERAL SAVINGS & LOAN ASSOCIATION.
(338 SE2d 730)

BIRDSONG, Presiding Judge.

This court granted a discretionary appeal by the City of Atlanta Board of Zoning Adjustment (hereinafter "board") from the judgment of the Fulton Superior Court reversing the decision of the board on an issue involving noncompliance by Fulton Federal Savings and Loan Association (hereinafter "bank"), with a conditional variance

from a zoning ordinance.

In November of 1982, the bank applied for a variance from a zoning ordinance to construct a transitional driveway across the Buckhead branch to permit access to Pharr Road on one side and Peachtree Road on the other side. Residents living in that area opposed the variance because of the additional traffic directed onto Pharr Road, which would come from patrons of a large number of bars, nightclubs, and restaurants in that area. The bank's vice president testified: "the neighborhood has asked, and we have agreed that we will provide gate control devices that will close that parking area off *after our business hours*. [Business hours at that time were 9 a.m. to 4 p.m.] So that the nearby bars and nightclubs do not utilize that; and it is undesirable from a residential standpoint, and we concur, and we have made that agreement. . . ." (Emphasis supplied.) The board approved the variance "conditioned upon . . . [t]he terms of the letter [from] Bill G. Huff, Jr. [Vice President of the bank] to William F. Kennedy [Zoning Administrator of the City of Atlanta]. . . ." The letter from Mr. Huff to the board assured them that "[g]ates will be placed to assure that the driveway is not utilized during hours Fulton Federal is not open."

Approximately six months after the board's approval of the variance, the bank installed an automatic teller machine at the Buckhead branch, and made a unilateral decision to remove the gates. A zoning inspector testified that the Atlanta Bureau of Buildings determined that the removal of the gates was in violation of the conditional variance and they issued a zoning violation correction notice to comply with the conditions of the variance. The bank appealed to the board.

The board held a hearing, in which the city contended the decision of the board on the variance was based upon the conditions extant at that time, i.e., the bank was closed from 4 p.m. to 9 a.m., and the board and adjacent residents were assured by the bank that their parking lot would not be utilized by patrons of the bars, nightclubs and restaurants, after "banking hours." The bank's position was that it only agreed that the parking lot would not be utilized "during hours Fulton Federal is not open" and "[w]ith the installation of the [automated] teller, Fulton Federal was open 24 hours a day; there were no hours during which Fulton Federal was not open." The board did not accept the bank's argument and *found as a fact* that the original variance had been conditioned upon a statement by the bank's vice president that "there is a problem with people utilizing the parking lot after hours; to respond to that the neighborhood has asked, and we have agreed that we will provide gate control devices that will close the parking area off after our business hours. So that the nearby bars and nightclubs do not utilize that, and it is undesirable from a residential standpoint, and we concur, and we have made that agreement." The board further conditioned its approval of the variance

upon a letter from the bank's vice president that they would install the gates to prevent such parking.

The bank appealed to the superior court, which found that since this was a review of an administrative appeal it was governed by the standard "that the administrative ruling was not made arbitrarily, capriciously or corruptly." But, the court then proceeded to hold that construction of the term "being open" is a "legal determination." The board's decision was "affirmed with directions that the legal interpretation of 'open' includes functioning automated teller machines." The board brings this appeal. *Held*:

1. The board contends that the superior court applied the incorrect standard of appellate review in its consideration of the appeal. We agree and reverse. The U. S. Supreme Court, in a zoning case, *Gorieb v. Fox*, 274 U. S. 603, 608 (47 SC 675, 71 LE 1228), and quoted with approval in *Schofield v. Bishop*, 192 Ga. 732, 740 (16 SE2d 714), and *Morgan v. Cherokee Hills Dev. Co.*, 226 Ga. 60, 62 (172 SE2d 669), held that "[s]tate legislatures and city councils, who deal with the [zoning] situation from a practical standpoint, are better qualified than the courts to determine the necessity, character and degree of regulation which these new and perplexing conditions require; and their conclusions should not be disturbed by the courts unless clearly arbitrary and unreasonable."

Hence, in *Bentley v. Chastain*, 242 Ga. 348, 352 (249 SE2d 38), our own Supreme Court found unconstitutional Code Chapter 69-12 insofar as it authorized a de novo jury review of decisions of a board of zoning appeals. See also *Geron v. Calibre Cos.*, 250 Ga. 213, 218 (296 SE2d 602). *Bentley* established the standard of review by a superior court of an administrative determination by a zoning board of appeals and found "the only review authorized is that inherent in the power of the judiciary: Whether the agency acted beyond the discretionary powers conferred upon it, abused its discretion, or acted arbitrarily or capriciously with regard to an individual's constitutional rights." 242 Ga. at 352. Accord *Strickland v. Douglas County*, 246 Ga. 640, 642 (272 SE2d 340); *Intl. Funeral Svcs. v. DeKalb County*, 244 Ga. 707, 710 (261 SE2d 625). However, this is not to say that the judiciary cannot review the reasonableness of zoning classifications, and issues involving constitutionality of legislative enactments, including zoning ordinances, which are questions of law for a court. *Guhl v. Pinkard*, 243 Ga. 129, 130 (252 SE2d 612). In the instant case, the superior court, as a matter of law, interpreted the meaning of the word "open" in the ordinance variance. The court exceeded its authority in the scope of its review, as defined by *Bentley*, supra, i.e.: Was the board acting outside its discretionary powers, and did it abuse its discretion or act arbitrarily or capriciously with regard to the bank's constitutional rights? We find that the superior court ap-

plied the incorrect standard of review.

2. It is alleged that the court erred in determining that the use of an automated teller machine outside of a bank branch means, as a matter of law, that the bank is "open" twenty-four hours per day, seven days per week. We agree.

The bank probably has not considered the far-reaching effect of its insistence that the bank is "open" when its automated teller is in operation. This legal stance may provide a convenient solution to the present issue of whether the bank may keep its gates open after its doors close. However, if the bank is open 24 hours per day, 7 days per week, as stated by its vice president, it could be in violation of OCGA § 7-1-294, which prohibits transaction of business by a bank on Sunday. Further, its legal obligation as to presentment of commercial paper "at a bank during its banking day" (OCGA § 11-3-503 (4)); acceptance without dishonor of commercial paper "until the close of the next business day following presentment" (OCGA § 11-3-506 (1)); delay in presentment of notice of dishonor or protest (OCGA § 11-3-601 (1) (i)); delay of collecting bank to secure payment of commercial paper (OCGA § 11-4-108); seasonable action in collection and sending of notice of dishonor or nonpayment (OCGA § 11-4-202); deferred posting of items and time of dishonor (OCGA § 11-4-301); and responsibility of a payor bank for late return of commercial paper (OCGA § 11-4-302), are affected by its judicial declaration that it is "open" 24 hours per day, 7 days per week.

The word "open" should not have been interpreted in a vacuum, but in the context in which it was used and considered by the board, i.e., the variance was granted to the bank because it agreed that it would install gates to its parking lot and close them after its "business hours," which at that time were from 9 a.m. until 4 p.m. There was no necessity for installing gates or locking them if the bank intended to be open 24 hours per day, 7 days per week. The testimony of one vice president and a letter from another vice president of the bank, made it clear to the board that they agreed that the residents had a legitimate concern over the use of the bank's parking lot after "business hours." The board made it crystal clear in its second hearing, on the appeal, that it found as a "fact" that it had conditioned its variance upon the assurances of the bank that gates would be installed and closed "after our [the bank's] business hours." Hence, the trial court erred in finding, as a matter of law, that the bank was always "open" within the meaning of the variance granted by the board.

3. The remaining enumeration is mooted by our holding above.

*Judgment reversed. Sognier, J., concurs. Carley, J., concurs in Division 2 and in the judgment.*

Decided November 27, 1985 —
Rehearing denied December 12, 1985 — 

*Marva Jones Brooks, Thomas A. Bowman, Robert L. Zoeckler,* for appellant.

*John G. Parker, Caryn R. May,* for appellee.