## S12A0867. DANIEL CORPORATION v. REED et al.
(732 SE2d 61)

BLACKWELL, Justice.

Within nine months after the City of Atlanta issues an alcohol license, the holder of that license must "open for business the establishment referred to in the license," and if the holder fails to do so, it automatically forfeits the license. City of Atlanta Code of Ordinances § 10-69 (a). SPI Club, Inc. operates two nightclubs in Atlanta, and in July 2010, the City issued an alcohol license for each club. Daniel Corporation contends that SPI Club failed to open either club for business within nine months of the issue of these licenses, and in April 2011, Daniel sued City officials, seeking a writ of mandamus to compel these officials to recognize an automatic forfeiture of the licenses. The court below found that SPI Club had, in fact, opened the clubs for business within the required time, and it denied the petition for a writ of mandamus. Daniel appeals, and we affirm.

After Daniel filed its petition, SPI Club intervened as a defendant, and the parties agreed to a stipulation of the material facts. According to that stipulation, one of the clubs hosted two private events in August 2010. The first event, on August 21, was a birthday celebration attended by approximately 100 people. The second event, on August 23, was a wedding celebration attended by approximately 50 people. Food and alcoholic beverages were served, but not sold, at both events, and musical entertainment was arranged by the third-party organizers of the events. Bartenders, servers, and other event workers were provided by a third-party employee leasing company that works with SPI Club. SPI Club charged a venue rental fee for the use of its club for the wedding celebration, but not for the birthday celebration.

The other club hosted a private event in October 2010 that was organized by a third-party promoter and attended by approximately 110 people. No food or alcoholic beverages were served at this event, but non-alcoholic beverages were served. The event was staffed by bartenders, servers, and other event workers provided by the same third-party employee leasing company, and the promoter hired a professional disc jockey for entertainment. SPI Club charged the promoter a venue rental fee for the use of the club, and the promoter

charged a cover to the people who attended the event, keeping the cover charges for himself.

Daniel contends that SPI Club failed to "open [the clubs] for business," as that term is used in the ordinance, in two respects. First, Daniel says, an establishment "open[s] for business" under the ordinance only when it commences to do business on a regular and continuing basis. Opening an establishment only on one or two days of a nine-month period does not, Daniel argues, satisfy the requirement. Second, Daniel contends, for a licensed establishment to "open for business," it must make some use of the license. Because no alcohol was sold at either club within nine months of the issue of the licenses, SPI Club made no use of the license, Daniel asserts, and it did not, therefore, "open [either club] for business."

The principles that guide our consideration of the meaning of statutes are settled ones, and we apply those same principles when we consider the meaning of an ordinance. *Risser v. City of Thomasville*, 248 Ga. 866, 866 (286 SE2d 727) (1982). As such, we look first to the text of the ordinance, and if the text is clear and unambiguous, we look no further, attributing to the ordinance its plain meaning. *Opensided MRI of Atlanta v. Chandler*, 287 Ga. 406, 407 (696 SE2d 640) (2010). As we look to the words of the ordinance, we attribute to those words "their ordinary, logical, and common meanings," unless a clear indication of some other meaning appears. *Judicial Council of Ga. v. Brown & Gallo*, 288 Ga. 294, 297 (702 SE2d 894) (2010). And we read the ordinance as a whole "according to the natural and most obvious import of the language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending [its] operation." *Jones v. Douglas County*, 262 Ga. 317, 321 (1) (b) (418 SE2d 19) (1992) (citations omitted). Moreover, as we consider the meaning of an ordinance, we remember that it is "not to be construed in a vacuum, but in relation to other [ordinances] of which [it is] a part, and all [ordinances] relating to the same subject matter are to be construed together, and harmonized wherever possible." *East West Express v. Collins*, 264 Ga. 774, 775 (1) (449 SE2d 599) (1994) (citation omitted). Finally, as this case involves a forfeiture ordinance, we recall that forfeitures, generally speaking, "are not favored." *Cisco v. State of Ga.*, 285 Ga. 656, 663 (3) (680 SE2d 831) (2009).

With these principles in mind, we turn to City of Atlanta Code of Ordinances § 10-69 (a), which provides:

All holders of licenses under this division must, within nine months after the issuance of the license, open for business the establishment referred to in the license. Failure to open the licensed establishment within the nine-month period

shall serve as automatic forfeiture and cancellation of the unused license, and no refund of license fees shall be made to the license holder.

City of Atlanta Code of Ordinances § 10-69 (a). We first consider the contention that the "open for business" requirement implies regularity and continuity, such that a license holder does not "open [an establishment] for business" simply by doing irregular and occasional business there. In light of the meaning ordinarily attributed to the word "open" when used in the context in which it appears in the ordinance, see *Bd. of Zoning Adjustment v. Fulton Fed. Sav. & Loan Assn.*, 177 Ga. App. 219, 222 (2) (338 SE2d 730) (1985), the requirement that an establishment "open for business" seems to refer to a discrete and singular point in time, the point at which an establishment commences or starts to do business.[1] Regularity and continuity are concepts that have no meaning with respect to a discrete and singular point in time, and the plain words of the ordinance do not, we think, reflect any requirement with respect to regularity or continuity.

Moreover, our understanding of the "open for business" requirement is consistent with the structure of the automatic forfeiture ordinance as a whole. The ordinance deals in subsection 10-69 (a) with license holders that fail to commence business within nine months of the issue of the license, but it deals separately in subsection 10-69 (b) with license holders that fail to continue the operation of their licensed establishments:

> Any holder of a license under this division who shall begin the operation of the business as authorized in the license but who shall for a period of nine consecutive months thereafter cease to operate the business as authorized in the license shall, upon completion of the nine months, automatically forfeit the license, which license shall, by virtue of the failure

---

[1] When used in this context, "to open" is usually understood to mean "[t]o commence the operation of: *open a new business*," American Heritage Dictionary of the English Language, p. 1267 (3d ed. 1992), or to "[b]egin, start, commence; set in action, initiate, (proceedings, operations, or business)." 2 New Shorter Oxford English Dictionary, p. 2004 (1993 ed.). This understanding of the phrase is consistent with our decision in *Monses v. State of Ga.*, 78 Ga. 110, 111 (1886), in which we held that a statute prohibiting one from keeping open a tippling house on the Sabbath day might be violated by opening such an establishment "but a moment." Compare *State Farm Mut. Auto. Ins. Co. v. Seeba*, 209 Ga. App. 328, 329 (433 SE2d 414) (1993) (phrase "engage in business," as used in policy of insurance, implies an element of continuity or habitual practice); *State Farm Fire & Cas. Co. v. Thigpen*, 131 Ga. App. 608, 610-611 (206 SE2d 839) (1974) (same).

to operate, be canceled without the necessity of any further action of the license review board or the council.

City of Atlanta Code of Ordinances § 10-69 (b). Subsection 10-69 (b) picks up where subsection 10-69 (a) leaves off. That subsection 10-69 (b) is addressed quite clearly to the question of continuity suggests to us that continuity is not an element of the requirement set out in subsection 10-69 (a). Accordingly, the court below did not err when it concluded that the irregular and occasional nature of the business conducted by SPI Club at its licensed clubs did not mean that the clubs did not "open for business" within the meaning of subsection 10-69 (a).[2]

We turn next to the contention that a license holder does not satisfy the "open for business" requirement of subsection 10-69 (a) unless and until it makes some use of the license, either by selling alcohol or offering it for sale. In clear and unambiguous terms, however, subsection 10-69 (a) identifies "the establishment referred to in the license" as the object of the requirement that the license holder "open for business." And in this context, "establishment" is ordinarily understood to refer to a business situated at a particular, fixed location.[3] The business carried on at such an establishment, of course, may be of more than one kind, and not all of the business carried on at the establishment may require an alcohol license. Consequently, to "open for business the establishment referred to in

---

[2] Without an element of regularity and continuity, Daniel worries that subsection 10-69 (a) would permit a license holder to satisfy the requirement that a licensed establishment "open for business" within nine months by way of a sham transaction that involves nothing more than, for instance, unlocking the doors of the establishment for one second. We decide nothing today about whether such an opening would satisfy the subsection 10-69 (a) requirement. We note that the stipulation in this case reflects bona fide business transacted at both clubs, albeit irregular and occasional business. According to the stipulation, numerous patrons visited each club, workers were engaged to serve the patrons at each club, beverages were served at each club, and SPI Club charged a venue rental fee for the use of each club. The record in this case does not indicate any sham transaction of the sort about which Daniel worries.

[3] As used in this context, "establishment" is normally understood to mean "[a] place of . . . business with its possessions and staff," American Heritage Dictionary of the English Language, supra at p. 628, or a "business; the premises or personnel of this." 1 New Shorter Oxford English Dictionary, supra at p. 853. This understanding is consistent with the usage of "establishment" throughout the Atlanta alcohol ordinances. See, e.g., City of Atlanta Code of Ordinances § 10-1 (defining "bar" in terms of "an establishment having a minimum capacity of 25 persons and a maximum capacity of 100 persons"; defining "brewpub" as "any eating establishment in which beer or malt beverages are manufactured or brewed"; defining "entertainment" as a live performance "upon the premises of a licensed establishment"; defining "nightclub" as "an establishment" having, among other things, a certain minimum capacity; defining "open air café" as "an establishment" having, among other things, a certain minimum capacity; and defining "premises" by reference to certain patios attached to an "establishment").

the license," as that phrase is ordinarily understood, would not necessarily involve engaging in any specific kind of business, including a kind for which a license is required. See *McCarty v. City of Atlanta*, 121 Ga. 365, 367 (2) (49 SE 287) (1904) (ordinance that prohibited the opening of a bar during certain hours may be violated if bar was opened, even if no alcohol was sold). If subsection 10-69 (a) were meant to require that an establishment engage specifically in the business for which a license is required, it presumably would say so explicitly.[4] The plain meaning of subsection 10-69 (a) does not include any requirement that a license holder make use of its license within nine months of the issue of the license.

In support of its contention that use of the license is required, Daniel points to the caption of section 10-69, which refers to "forfeiture for nonuse," and to the reference in subsection 10-69 (a) to the forfeiture of "the unused license." Neither is a compelling reason to depart from the plain meaning of the ordinance. The caption of a law may be a useful interpretative aid when the text of the law is ambiguous, but it cannot alter the clear and unambiguous meaning of a law.[5] See *City Council of Augusta v. Augusta-Aiken R. & Elec. Corp.*, 150 Ga. 524 (1) (a) (104 SE 505) (1920). Here, subsection 10-69 (a) presents no ambiguity. And with respect to the reference in the text of subsection 10-69 (a) to the forfeiture of "the unused license," the adjective "unused" appears to us to be merely descriptive of the license to be forfeited. By definition, if a licensed establishment has not been opened for business at all — whether to carry on the business for which a license is required or for some other purpose — the license has gone unused. Accordingly, the use of that descriptive term does

---

[4] Such a more explicit requirement arguably is found in subsection 10-69 (b), which provides for forfeiture of a license issued to a holder who "shall begin the operation of the business *as authorized in the license* but who shall for a period of nine consecutive months thereafter cease to operate the business *as authorized in the license*." We need not decide in this case, which involves only subsection 10-69 (a), whether "as authorized in the license" limits subsection 10-69 (b) to license holders that have made some use of their license and thereafter fail to continue to use the license. The automatic forfeiture ordinance may or may not deal with a license holder that commences operation of his business and later discontinues it, without ever having used the license. Compare *City Council of St. Mary's v. Crump*, 251 Ga. 594 (2) (308 SE2d 180) (1983) (involving similar ordinance providing for automatic forfeiture of alcohol license if license holder ceased to operate the business "and sale of the product or products authorized"). Perhaps that was an oversight in the drafting of the ordinance, but "[i]f so, it is for the Legislature, not the Courts, to remedy the defect." *Hobbs v. Cody*, 45 Ga. 478, 480 (1872).

[5] The court below observed that, under City of Atlanta Code of Ordinances § 1-3, "[t]he catchlines of the several sections of this Code in boldface type are intended as mere catchwords to indicate the contents of the sections and shall not be deemed or taken to be titles of such sections nor as any part of such sections." Moreover, we note that the full caption of section 10-69 is "Time limit for commencement of business in licensed establishment; forfeiture for nonuse," a caption that is wholly consistent with our understanding of subsection 10-69 (a).

not alter the otherwise unambiguous requirement that a license holder need only "open for business the establishment referred to in the license" to avoid forfeiture. Consequently, the court below did not err when it concluded that a license holder need not make use of its license to satisfy the "open for business" requirement of subsection 10-69 (a).

For these reasons, the court below properly denied the petition for a writ of mandamus, and we affirm the judgment below.[6]

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 1, 2012.

*Ichter Thomas, James J. Thomas II*, for appellant.

*Greenberg Traurig, Mark G. Trigg, Amber A. Robinson*, for appellees.

---

[6] When it intervened as a defendant, SPI Club sought a declaratory judgment that the automatic forfeiture provision of subsection 10-69 (a) is unconstitutional. The court below concluded that the request for declaratory relief was moot in the light of its denial of the petition for mandamus, but the court proceeded to address the constitutional issues anyway. The constitutional issues are not raised on appeal, and we decide nothing about the constitutionality of subsection 10-69 (a).