S12F1302. HENDRY v. HENDRY.

(734 SE2d 46)

BLACKWELL, Justice.

John Allan Hendry and Sally Frances Hendry were married in 1998, and after three children were born of the marriage, they were divorced. In its final judgment and decree of divorce, the trial court awarded primary physical custody of the children to Sally, and it ordered John to pay $2,400 to Sally each month as child support. John appeals,[1] contending that the court erred in several respects in its determination of his child support obligations. We agree with John that the trial court erred when it calculated his gross income to include amounts that his employer pays him to reimburse the costs of his family health insurance premiums, but we find no merit in his other claims of error. Accordingly, we affirm in part, reverse in part, and remand for the trial court to recalculate his gross income and to consider again the amount of his child support obligation.

1. The record shows that John is paid $935 each month by his employer to reimburse the amount that he pays from a checking account as a premium for family health insurance, insurance that covers the children born of his marriage to Sally. The reimbursement covers the entire cost of the premium, and his employer identifies the reimbursement as a benefit, not as salary. Nothing in the record indicates that, if the cost of the premium decreased, his employer

---

[1] Pursuant to OCGA § 5-6-35 (a) (2) and Supreme Court Rule 34 (4), John timely filed an application for discretionary review of the final judgment and decree of divorce, which we granted.

would continue to pay the same amount to John as a benefit, such that John might redirect the portion of the benefit in excess of the cost of the premium to his ordinary living expenses. The trial court counted the reimbursement as gross income attributable to John, and John contends that this finding was erroneous. We agree.

For purposes of child support, gross income includes "all income from any source," OCGA § 19-6-15 (f) (1) (A), and generally speaking, fringe benefits of employment that "significantly reduce personal living expenses" are counted as gross income. OCGA § 19-6-15 (f) (1) (C). Gross income does not include, however, "employee benefits that are typically added to the salary, wage, or other compensation that a parent may receive as a standard added benefit, *including, but not limited to, employer paid portions of health insurance premiums . . . .*" OCGA § 19-6-15 (f) (1) (C) (emphasis supplied). John argues that his monthly reimbursement for the cost of his health insurance premium represents "employer paid portions of health insurance premiums," and that the reimbursement does not count, therefore, as his gross income. In response, Sally notes that John himself remits the premium to his insurer, and his employer does not *directly* pay any amount to the insurer. For this reason, she contends, the reimbursement does not represent "employer paid portions of health insurance premiums."[2]

When we consider the meaning of a statute, "we look first to the text of the [statute], and if the text is clear and unambiguous, we look no further, attributing to the [statute] its plain meaning." *Daniel Corp. v. Reed*, 291 Ga. 596 (732 SE2d 61) (2012). See also *Opensided MRI of Atlanta v. Chandler*, 287 Ga. 406, 407 (696 SE2d 640) (2010). And "[a]s we look to the words of a [statute], we attribute to those words 'their ordinary, logical, and common meanings,' unless a clear indication of some other meaning appears." *Daniel Corp.*, 291 Ga. at

---

[2] Sally also argues that, in the absence of evidence that his employer reimbursed health insurance premiums for other employees, John is not entitled to exclude the reimbursements from his gross income because they are not a "standard added benefit." But the reference in OCGA § 19-6-15 (f) (1) (C) to "standard added benefit" is followed immediately by the phrase "including, but not limited to, employer paid portions of health insurance premiums." This phrase reflects broad language of illustration or enlargement. See *Berryhill v. Ga. Community Support & Solutions*, 281 Ga. 439, 442 (638 SE2d 278) (2006). "[E]mployer paid portions of health insurance premiums" are a specific example of the generally described "standard added benefit[s]" that must be excluded from gross income, and as a matter of law, "employer paid portions of health insurance premiums" must be excluded. Moreover, even if the specific reference to "employer paid portions of health insurance premiums" conflicted in some way with the more general reference to "standard added benefit[s]," the specific provision would prevail, and the more general provision would govern only those cases that fall outside the scope of the specific provision. See *Krieger v. Walton County Bd. of Commrs.*, 269 Ga. 678, 681, n. 16 (506 SE2d 366) (1998).

597. See also *Judicial Council of Ga. v. Brown & Gallo*, 288 Ga. 294, 297 (702 SE2d 894) (2010). In ordinary usage, when one says that an expense is "employer paid," he often means that the employer has tendered or delivered the payment directly to the person to whom payment is due. See American Heritage Dictionary of the English Language, p. 1330 (3d ed. 1992) ("pay" means "[t]o give (money) in exchange for goods or services; . . . [t]o discharge or settle (a debt or an obligation)"); 2 New Shorter Oxford English Dictionary, p. 2129 (1993 ed.) ("pay" means to "[g]ive . . . money etc. that is due for . . . a service done, or a debt incurred; . . . [h]and over or transfer money in discharge of (a debt, fee, wage, etc.)"); Black's Law Dictionary, p. 1128 (6th ed. 1990) ("pay" means "[t]o discharge a debt by tender of payment due; to deliver to a creditor the value of a debt, either in money or in goods, for his acceptance"). But that is not always the case. Sometimes, when one says that an expense is "employer paid," he means only that the employer has borne the cost of the expense. Cf. *Stern v. Provident Life & Accident Ins. Co.*, 295 FSupp.2d 1321, 1323 (I) (M.D. Fla. 2003) (characterizing long-term disability insurance plan as "employee-paid plan" where employer remitted premiums to insurer, but employees "actually paid the premiums with their after-tax earnings"). Standing alone, the text of OCGA § 19-6-15 (f) (1) (C) does not clearly answer the question with which we are confronted in this case.

But subsection (f) (1) (C), of course, does not stand alone. When we consider the meaning of a statutory provision, we do not read it in isolation, but rather, we read it in the context of the other statutory provisions of which it is a part. *East West Express v. Collins*, 264 Ga. 774, 775 (1) (449 SE2d 599) (1994). "[A]ll statutes relating to the same subject matter are to be construed together, and harmonized wherever possible." Id. (citation omitted). Context is important, and in this case, the context of subsection (f) (1) (C) provides an answer to our question.

When a parent provides health insurance for his child, and the parent, not his employer, bears the cost of the insurance, other statutory provisions direct a court to adjust the child support obligation of the parent to reflect this cost. See OCGA § 19-6-15 (b) (6), (b) (7), (h) (2) (A). This adjustment is required whenever health insurance premiums for the child are "paid by a parent," OCGA § 19-6-15 (h) (2) (A) (i), and the statute specifies that the adjustment is required in such cases, whether or not the premiums are "paid directly by the parent or through a payroll deduction." OCGA § 19-6-15 (h) (2) (A) (ii). Such an adjustment is not available, however, for "[p]ayments made by a parent's employer for health insurance and not deducted from the parent's wages." OCGA § 19-6-15 (h) (2) (A) (i). Reading

subsections (f) (1) (C) and (h) (2) (A) together, the statute appears to account comprehensively for the costs of premiums paid by, or on behalf of, a parent to provide health insurance for his child, but it accounts for those costs separately, depending on who ultimately bears the costs, the parent or his employer. Because it seems clear that these subsections are meant to complement one another, and because "paid by a parent" refers in subsection (h) (2) (A) to costs borne by the parent, we understand "employer paid," as that term is used in subsection (f) (1) (C), to refer most naturally to premium costs borne by the employer.

It appears from the record that John is paid $935 each month by his employer only because he actually remits that amount each month as a premium for family health insurance, and we find no evidence that he would continue to receive the same amount if the cost of his premiums decreased or that he could redirect the amount of his reimbursement to his ordinary living expenses. In these circumstances, the premiums that he remits to his insurer, and for which he is reimbursed by his employer, "are in reality employer paid health insurance premiums." *Culver v. Pilkauskas*, 859 A2d 818, 820 (Pa. Super. 2004) ("flex credits" paid to mother by her employer were employer-paid health insurance premiums where "[m]other said she would not receive that money if she did not buy the health insurance"). Accordingly, the trial court erred when it counted the reimbursements for the cost of health insurance premiums toward his gross income, we must reverse the order of child support, and we must remand for the trial court to recalculate the gross income attributable to John and to redetermine the amount of his child support obligation consistent with this opinion.[3] See *Stowell v. Huguenard*, 288 Ga. 628, 632 (706 SE2d 419) (2011).

---

[3] Although the trial court counted the reimbursements as gross income, it did give John some credit for the provision of health insurance for the children by adjusting his child support obligation pursuant to OCGA § 19-6-15 (h) (2) (A). As we have explained, however, such an adjustment is warranted only when a parent bears the costs of providing health insurance, and in this case, the costs ultimately were borne not by John, but by his employer. Moreover, to exclude the amount of his reimbursements from his gross income pursuant to OCGA § 19-6-15 (f) (1) (C), and at the same time, to credit him by way of an adjustment under OCGA § 19-6-15 (h) (2) (A), would be to give John double credit for providing health insurance for the children, and it would confer a windfall. See *Jarvis v. Jarvis*, 584 NW2d 84, 90 (III) (N.D. 1998) (disallowing "double credit for the uninsured medical expenses" paid by father); *Miller-Bent v. Miller-Bent*, 680 So2d 1119, 1120-1121 (Fla. App. 1996) ("Giving the husband credit for [the full amount of health-insurance premiums] in two separate calculations constituted error."). Accordingly, on remand, the trial court should recalculate gross income without the reimbursements, but it also should recalculate his child support obligation without any adjustment for premiums that are fully reimbursed.

2. "[A] trial court must initially prorate child care expenses between the parents to arrive at the adjusted child support obligation, OCGA § 19-6-15 (b) (6), and must then adjust that figure by factoring in the amount of child care expenses actually paid by each parent, OCGA § 19-6-15 (b) (7)." *Dupree v. Dupree*, 287 Ga. 319, 323 (6) (695 SE2d 628) (2010). See also OCGA § 19-6-15 (h) (1) (E), (F). John contends that the trial court erred when it gave Sally credit for the actual payment of daycare expenses, inasmuch as he had paid these expenses while Sally was unemployed.[4] But by the time of the hearing, Sally had found work, and nothing in the record suggests that John would continue to be responsible for actually making payments to child care providers. As the primary physical custodian of the children, it is only logical to conclude that Sally would be directly responsible for those payments. Indeed, Schedule D of the court's child support worksheet confirms that the child care expenses are to be paid by Sally. See *Kennedy v. Kennedy*, 309 Ga. App. 590, 592 (1) (b) (711 SE2d 103) (2011). And "an adjustment to the presumptive amounts of child support has been made to account for this expense." *Simmons v. Simmons*, 288 Ga. 670, 673 (4) (706 SE2d 456) (2011). Compare *Dupree*, 287 Ga. at 323 (6) (where the trial court erroneously omitted these steps but the error was harmless). Accordingly, the trial court did not err in accounting for child care expenses in its determination of child support.

3. Finally, John argues that the trial court erred in adopting a child support worksheet presented to the court by Sally that never was entered into evidence or filed with the court and that was presented only during closing argument. Although OCGA § 19-6-15 (c) (4) provides that "the parties shall submit to the court their worksheets and schedules," it does not provide when they should be submitted or that they should be introduced as evidence at trial. John relies on Uniform Superior Court Rule 24.2, which requires that the child support worksheet and schedules be completed to the extent possible, filed with the clerk, and served on the opposing party, along with a financial affidavit, at least 15 days before the hearing.[5] But

---

[4] John also argues that the amount of the child care expenses credited to Sally was not sufficiently proved because, although Sally had found employment by the time of the hearing, she did not know, he claims, how many days or hours she would be working. But Sally presented evidence that she had already started her new job, that she would be working 20 hours each week, and that she would be paying an average of $775 per month in preschool tuition and additional child care expenses. The child support guidelines provide for such proof of the actual cost of work-related child care which will be necessary in the future. OCGA § 19-6-15 (h) (1) (D).

[5] We note that the Uniform Superior Court Rules are to be read in conjunction with, and in case of conflict must yield to, Georgia's statutory law. *Hammack v. Hammack*, 281 Ga. 202, 202-203 (635 SE2d 752) (2006); Uniform Superior Court Rule 1.

neither OCGA § 19-6-15 (c) (4) nor Rule 24.2 states the consequence of failing to file the worksheet and schedules, or of filing them in an untimely manner. See *Williamson v. Williamson*, 825 NE2d 33, 43 (II), n. 4 (Ind. App. 2005); *Dye v. Young*, 655 NE2d 549, 550 (Ind. App. 1995).

> Where a statute [or rule] directs that a thing be done in a certain time without negative words prohibiting the subsequent performance, generally, the provision of time is directory only; where no injury results from such delay, subsequent performance is deemed substantial compliance with the statutory requirements.

*Beacon Med. Products v. Travelers Cas. & Surety Co. of America*, 292 Ga. App. 617, 621, n. 2 (665 SE2d 710) (2008) (citation omitted). Here, we perceive no injury from the delay in Sally presenting her child support worksheet and schedules, as ample evidence was presented to the trial court at the final hearing. See *Williamson*, 825 NE2d at 43, n. 4.

*Judgment affirmed in part, reversed in part, and case remanded with direction. All the Justices concur.*

DECIDED NOVEMBER 5, 2012.

*Hait, Eichelzer & Kuhn, Elizabeth J. Kuhn*, for appellant.
*Lawrence L. Washburn III, Nicholas P. Martin*, for appellee.