Markle, Judge.
In this appeal, we are asked to decide whether the Clayton County Board of Zoning Appeals ("BZA") may require a business license permit applicant to comply with sections 6.2 and 6.32[1] of the Clayton County Zoning Ordinance ("the Zoning Ordinance"), and to submit a site plan of its proposed use of the property to show such compliance. After the BZA concluded that New Image Towing and Recovery, Inc. ("New Image") was required to comply with those sections, New Image filed a petition for writ of certiorari in the Superior Court of Clayton County challenging the BZA's decision. The superior court reversed the BZA's decision. We granted Clayton County's ("the County's") application for discretionary appeal, and the County now appeals, arguing that the superior court applied an improper standard of review and erred in refusing to consider Article 1 of the Zoning Ordinance. We conclude that the superior court misinterpreted the applicable ordinances, and therefore reverse.
On a petition for writ of certiorari, "[t]he scope of review of the superior court is limited to all errors of law and determination as to whether the judgment or ruling below was sustained by substantial evidence." (Citation and punctuation omitted.) City of Dunwoody v. Discovery Practice Mgmt., Inc. , 338 Ga. App. 135, 138 (2), 789 S.E.2d 386 (2016) ; OCGA § 5-4-12 (b). "In the appellate courts, the standard of review is whether there is any evidence supporting the decision of the local governing body, not whether there is any evidence supporting the decision of the superior court." (Citation and punctuation omitted.) Jackson County v. Earth Res., Inc. , 280 Ga. 389, 391, 627 S.E.2d 569 (2006).
So viewed, the record reflects that New Image, a towing and wrecker service, leased a facility located in Morrow, Georgia in Clayton County's Heavy Industrial ("HI") zoning district. The property had previously been occupied by a fencing company. In October 2016, the Clayton County Planning and Zoning Administrator ("the Administrator") verified that towing and wrecking was a permitted use of the property, and New Image was able to pursue its application for a business license. During the application process, New Image met with the Technical Review Committee ("TRC"), which included the County Water Authority, the Transportation and Development Department, the Planning and Zoning Department, and the Fire Department. The TRC directed New Image to submit a site plan to facilitate its review, but New Image refused to do so.[2] New Image's application for a business license was then suspended.
*808 In an email dated March 2017, the Administrator responded to New Image's request for a written decision and confirmed that New Image was required to submit a proposed site plan to show how it would comply with parking and other development requirements under the Zoning Ordinance. New Image appealed this decision to the BZA, and requested the issuance of its business license.
At a hearing before the BZA, New Image challenged the application of sections 6.2 and 6.32 of the Zoning Ordinance to its use of the property. Section 6.2 requires compliance with the minimum development standards under Article 6, including the parking standards set forth in section 6.32, when a "structure, parking area or other site feature ... [is] enlarged, altered , or expanded." (emphasis supplied).
New Image argued that the term "altered" related to physical alterations only; therefore, because it did not intend to improve or alter the physical features of the property, sections 6.2 and 6.32 did not apply, and the site plan was thus unnecessary. The Administrator testified that it was common to request a site plan during the business license application process, and that, in this instance, the site plan was necessary to evaluate the effects of the proposed change in the use of the land on the environment, and public safety and welfare. The BZA unanimously voted to uphold the Administrator's decision and found that New Image must submit a site plan to show its compliance with sections 6.2 and 6.32.
New Image filed a petition for writ of certiorari to the superior court, challenging the decision of the BZA. Following a hearing, the superior court reversed the BZA's decision. It strictly construed section 6.2 in favor of New Image as the property owner, and found that section 6.2 applies only when enlarging, altering, or expanding physical features of the property; therefore, New Image was not required to adhere to the parking standards in section 6.32. The superior court further found that New Image was not required to submit a site plan because there is no such express requirement in Article 6. We granted the County's application for discretionary review, and this appeal followed.
1. In related enumerations of error, the County argues that the superior court erred by reviewing de novo the BZA's decision. The County further argues that the superior court misinterpreted section 6.2 by ignoring its plain meaning and impermissibly deferring to New Image's interpretation of that section. We conclude that the superior court erred in its construction of Article 6.
The County asserts that this matter does not involve construction of the Zoning Ordinance because the BZA made a factual finding that New Image's license application was subject to sections 6.2 and 6.32, and, with regard to the requirement for the site plan, the Administrator was exercising her administrative discretion. The County thus contends that, instead of reviewing the BZA's decision de novo, the superior court was confined to consider "[w]hether the agency acted beyond the discretionary powers conferred upon it, abused its discretion, or acted arbitrarily or capriciously with regard to an individual's constitutional rights." City of Atlanta Bd. of Zoning Adjustment v. Midtown North, Ltd. , 257 Ga. 496, 499 (4), 360 S.E.2d 569 (1987).
The standard of review in a certiorari proceeding before a superior court varies depending on whether the matter involves an issue of fact or an issue of law. OCGA § 5-4-12 (b) provides that the superior court's "review [is] limited to all errors of law and determination as to whether the judgment or ruling below was sustained by substantial evidence." Because "the substantial-evidence standard is effectively the same as the any-evidence standard," courts apply the any-evidence standard when reviewing issues of fact. (Citation omitted.) City of Atlanta Govt. v. Smith , 228 Ga. App. 864, 865 (1), 493 S.E.2d 51 (1997). But when reviewing a question of law, such as the interpretation of a zoning ordinance, the scope of review is de novo. See *809 SDS Real Property Holdings, Ltd. v. City of Brookhaven , 341 Ga. App. 862, 864 (1), 802 S.E.2d 100 (2017).
Here, the BZA did more than simply make a factual finding; rather, it did so in the context of the Zoning Ordinance, specifically with respect to the meaning of "altered" in section 6.2. Thus, the superior court was compelled, as we are, to construe the ordinance in determining whether the agency overreached its authority. Northside Corp. v. City of Atlanta , 275 Ga. App. 30, 31 (1), 619 S.E.2d 691 (2005) ; see also SDS Real Property Holdings, Ltd. , 341 Ga. App. at 864 (1), 802 S.E.2d 100 ; City of Atlanta Bd. of Zoning Adjustment , 257 Ga. at 497-498 (1), 360 S.E.2d 569. And,
[w]e review the construction of a zoning ordinance under a de novo standard. ... Zoning ordinances are to be strictly construed in favor of the property owner. Because statutes or ordinances which restrict an owner's right to freely use his property for any lawful purpose are in derogation of the common law, they must be strictly construed and never extended beyond their plain and explicit terms.
(Citation and punctuation omitted.) SDS Real Property Holdings, Ltd. , 341 Ga. App. at 862, 802 S.E.2d 100. Thus, the superior court's error was not in the standard of review it applied, but in the conclusion it reached upon construing the ordinance. Importantly, the superior court failed to consider the common rules of statutory construction in its analysis.
Our principles of statutory construction are well-settled and apply in our construction of an ordinance. (Citation omitted.) Daniel Corp. v. Reed , 291 Ga. 596, 597, 732 S.E.2d 61 (2012).
As such, we look first to the text of the ordinance, and if the text is clear and unambiguous, we look no further, attributing to the ordinance its plain meaning. As we look to the words of the ordinance, we attribute to those words their ordinary, logical, and common meanings, unless a clear indication of some other meaning appears. And we read the ordinance as a whole according to the natural and most obvious import of the language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending its operation. Moreover, as we consider the meaning of an ordinance, we remember that it is not to be construed in a vacuum, but in relation to other ordinances of which it is a part, and all ordinances relating to the same subject matter are to be construed together, and harmonized wherever possible.
(Citations and punctuation omitted.) Id. ; see also City of Buchanan v. Pope , 222 Ga. App. 716, 717, (1), 476 S.E.2d 53 (1996).
Turning to the Zoning Ordinance, section 6.2 provides:
No structure, parking area, or other site feature regulated by this ordinance shall be enlarged, altered, or expanded unless the minimum improvements required by this Article are provided to the property to the extent of its alteration or expansion. In the case of a substantial expansion, the portion of the site affected must meet the requirements of this Article. An alteration or expansion to an existing property is substantial when the area or square footage of the expanded or altered land (including property used for building space, parking, or storage) or structure, respectively, exceeds twenty (25) percent of the area or square footage of the existing land or structure, exclusive of the alteration or expansion.
Section 6.32 pertains to parking standards, generally, and subpart PK-03 applies to HI districts, providing minimum requirements for parking lots, such as paving, drainage, and lighting.
Guided by the principles set forth above, as we consider the term, "altered," in section 6.2, we look to its plain and ordinary meaning. Daniel Corp. v. Reed , 291 Ga. at 597, 732 S.E.2d 61. "Altered" is generally defined in broad terms as "made different in some way." https://www.merriam-webster.com/dictionary/altered. Next, we consider sections 6.2 and 6.32 in the context of Article 6 in its *810 entirety. Georgia Power Co. v. Clark , 69 Ga. App. 273, 277 (1), 25 S.E.2d 91 (1943) ("In construing ordinances, as in the case of statutes, those in pari materia should be consulted together, in order to arrive at the meaning of one."). The County points to section 6.1 of the Zoning Ordinance as the basis of the Administrator's authority to request a site plan. We find that it is also germane to our interpretation of sections 6.2 and 6.32.
(a) Section 6.1 provides:
All structures, land uses, land use changes, structural alterations, structural relocations, structural additions, and structural enlargements that are constructed, created, established, or otherwise occur after the effective date of this ordinance (except as may otherwise be provided within this ordinance) shall be subject to all Development Standards and regulations for the applicable zoning district.
This section expressly includes "land uses" and "land use changes" within the scope of Article 6. Therefore, Article 6 applies to New Image's business application - regardless of whether the features of the property are physically altered- because New Image proposed a change in the use of the property.
In light of the broad scope set forth in section 6.1, we conclude that the superior court's interpretation of the term "altered" in Section 6.2 is too narrow. See SDS Real Prop. Holdings, Ltd. , 341 Ga. App. at 866 (1), 802 S.E.2d 100 ("All parts of an ordinance relating to the same subject matter must be harmonized to reconcile conflicts, and any section of an ordinance must be construed in relation to the whole ordinance of which it is a part.") (citations and punctuation omitted). Moreover, under section 6.32, certain parking standards are dependent upon the intensity of a property's use, e.g., a factory is subject to a different parking space ratio than a salvage, storage, or junk facility. Therefore, we must read section 6.2 to include alterations in the use of a property; a narrower interpretation is patently unreasonable. And, although zoning ordinances, as well as any ambiguities therein, are to be strictly construed in favor of the property owner, they "nevertheless must be given a reasonable construction." (Citation omitted.) Bo Fancy Productions, Inc. v. Rabun County Bd. of Commrs. , 267 Ga. 341, 343 (1) (b), 478 S.E.2d 373 (1996). Viewing sections 6.2 and 6.32 in harmony with section 6.1, we find that the term "altered" in section 6.2 includes changes in land use unaccompanied by physical alterations to the site.
Here, there was evidence that New Image's proposed use varied from that of the former lessee. See Jackson County , 280 Ga. at 391, 627 S.E.2d 569 (under the appropriate standard of review, "we consider whether there is any evidence supporting the decision of the local governing body.") (citation omitted). As recognized by one of the BZA members, and testified to by the Planning and Zoning Division consultant at the BZA hearing, there is a significant difference in intensity of use between the former fencing company's "laying wire" and New Image's proposed use involving "laying down any number of vehicles." Therefore, the BZA correctly found that New Image was altering the site and was thus required to comply with sections 6.2 and 6.32. The superior court erred in reversing the BZA's decision.
(b) Turning to the site plan, the County argues that the Administrator's authority to request one stems from section 6.1, as a means to gauge an applicant's compliance with Article 6 Although there is no specific reference to site plans in section 6.1 or 6.2, other sections of Article 6 contemplate the submission of one. Notably, pursuant to the section pertaining to parking standards, the Administrator may defer some parking requirements if she determines that the parking standards for a proposed use are excessive and if the applicant's site plan allocates space for future parking improvements. Clayton County Zoning Ordinance § 6.32, PK-03 (Q).
At the BZA hearing, the Administrator testified that a site plan is required during the application process so that the TRC can make informed zoning decisions and consider *811 potential environmental and safety impacts of the proposed use. The consultant testified that, without a site plan, the County planners and the Administrator "have nothing to go by" and cannot make determinations regarding essential criteria, such as the arrangement of the vehicles on the property or their ingress and egress.
New Image contends that the Administrator's authority to require a site plan during the business application process is arbitrary because there are no express guidelines set forth in the Ordinance governing her discretion to do so. In support of this argument, New Image cites to Arras v. Herrin , 255 Ga. 11, 334 S.E.2d 677 (1985). We are not persuaded.
In Arras , a convenience store owner brought a constitutional challenge against a county ordinance where he was denied a license to sell alcoholic beverages despite satisfying the technicalities of the applicable county ordinance. The ordinance at issue gave the local governing body unfettered discretion in determining both the fitness of an applicant to operate such a business and whether the business "is proper and to the best welfare and in the best interests of" the county. Id., 255 Ga. at 12, 334 S.E.2d 677. The Supreme Court of Georgia found that the applicant was denied due process because this language was impermissibly vague and afforded no control over the governing body's discretion. Id.
First, we note that the posture here is somewhat different from that in Arras because New Image has not yet completed the application process, which stalled upon its unexplained refusal to submit a site plan; thus, there is no deprivation of a constitutional right at issue here, as in Arras . Moreover, the development standards that guide the business license application process are set forth in Article 6, and those include the submission of site plans. Finally, apart from selective language taken from the BZA hearing minutes,[3] New Image points to no evidence that would show that the requirement for the site plan was arbitrary in this instance. To the contrary, as discussed above, the Administrator explained that a site plan was necessary to determine whether New Image's proposed use was in compliance with sections 6.2 and 6.32. This explanation is entirely reasonable, especially in the absence of any evidence of harm New Image would suffer due to the requirement for the site plan. Cf. Frazier v. Deen , 221 Ga. App. 153, 154, 470 S.E.2d 914 (1996) (waiver of garage placement covenant not arbitrary and capricious where there was no evidence of harm to plaintiffs).
Viewing Article 6 as a whole, and considering the record below in its entirety, the Administrator did not abuse her discretion in requiring New Image to submit a site plan during the business license application process, nor did the BZA abuse its discretion in upholding that decision. See City of Atlanta Bd. of Zoning Adjustment , 257 Ga. at 499 (4), 360 S.E.2d 569. Accordingly, the superior court erred in its holding that the site plan was not required.
Because we find that the superior court misconstrued the applicable sections of the Zoning Ordinance, we reverse the superior court's decision.
2. Based on our ruling in Division 1, we need not address the County's remaining enumeration of error.
Judgment reversed.
Doyle, P. J., concurs. Coomer, J., dissents.
*812 * THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2

These sections set forth certain development standards and requirements for applicable zoning districts. Section 6.32 addresses parking standards, specifically.

New Image has not articulated a reason for its refusal to submit a site plan before this Court or, as the record reflects, at any point during the proceedings below.

In an attempt to show arbitrariness, New Image points to a phrase in the Administrator's statement at the commencement of the hearing: "we require site plans in certain instances and this is one of those instances ..." However, prior to this comment, the Administrator explained that the reason a site plan may be required is to facilitate her department's task of determining whether a property is permitted under the zoning classifications. Furthermore, in explaining the procedures for the pre-application meeting with the TRC, the Administrator later stated that they would typically request a site plan as part of that process. And, as discussed above, the Administrator adequately justified her rationale for requiring a site plan under these circumstances throughout the hearing.